Waldemar J. GEREND, Petitioner,

v.

**RAILROAD RETIREMENT BOARD,**
Respondent.

No. 15417.

United States Court of Appeals
Ninth Circuit.

Sept. 26, 1957.

**358**

W. J. Gerend, in pro. per.

Myles F. Gibbons, General Counsel, David B. Schreiber, Associate General Counsel, Paul M. Johnson, Richard F. Butler, Attorneys, R. R. Retirement Board, Chicago, Ill., for respondent.

Before STEPHENS, Chief Judge, and BONE and HAMLEY, Circuit Judges.

BONE, Circuit Judge.

Petitioner asks this Court to review the proceedings of, and determination by, the Railroad Retirement Board (herein Board) of the annuity awarded petitioner by the Board. Petitioner asserts that the annuity of $123.76 is smaller in amount than he merits. This Court has a rather limited review power of the Board decision under Section 11 of the Railroad Retirement Act, 45 U.S.C.A. § 228k, which section incorporates by reference Section 5(f) of the Railroad Unemployment Insurance Act, 45 U.S.C.A. § 355(f). This latter section provides, in part: " * * * The findings of the Board as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive."

The major point of controversy in this case concerns whether petitioner was employed by Southern Pacific Company (herein Southern Pacific) from midyear 1932 to May, 1938. In September, 1926, petitioner was working for Southern Pacific. At that time he ceased working for this company and began working for Mr. Paul Shoup, then Executive Vice President of Southern Pacific. In employing petitioner it was understood that he was not working for Southern Pacific. Petitioner was made secretary and manager of an association or company newly organized by Shoup to provide a means to make stock investments by officers of Southern Pacific. The new company was called the Railroad Securities Company (herein Securities Company) ; it was not a subsidiary of Southern Pacific, though the latter's stock was the principal stock to be purchased. Petitioner was employed in the affiairs of Securities Company until its dissolution on December 31, 1936. In addition, petitioner took care of some personal matters of Shoup.

Petitioner admittedly performed no services for Southern Pacific for over five years after September, 1926, but he was paid $25 per month by Southern Pacific (reduced to $22.50 for a short time), and this $25 payment was continued until June 1, 1938. Petitioner asserts that in midyear 1932 it was agreed between himself and Shoup that the $25 monthly payments were to be compensation for performance of small tasks for Southern Pacific.

Board found that petitioner did not perform services for Southern Pacific from September, 1926, through May, 1938, and that the $25 per month he received from Southern Pacific was not remuneration for any services he may have performed for Southern Pacific during this period. Whether petitioner was *performing services* for Southern Pacific during this particular period becomes a

matter of importance in this case since petitioner must have then been performing services for Southern Pacific in order that payments made to him, and the years covered by the payments, be used in the computation of his annuity. Section 1(f) of the Railroad Retirement Act, 45 U.S.C.A. § 228a(f) defines "years of service" as "the number of years an individual as an employee shall have rendered service to one or more employers for compensation or received remuneration for time lost * * *." The evidence rather clearly shows that the payments of $25 per month were made to petitioner to preserve his "pass" privileges and pension rights if and when he should resume working for Southern Pacific. The evidence substantially supports the Board's finding that petitioner was not in the service of Southern Pacific during the years in issue, that is to say, from midyear of 1932 to May 31, 1938.

Petitioner presents six points wherein he asserts the Board erred.[1] We take up each of these points.

Point 1–A. Petitioner asserts error "of undue prejudice" with respect to him by refusing his offer to the Board not to include the period from October 1, 1926, to December 31, 1931, when computing petitioner's "years of service" for the purpose of determining his annuity. Why petitioner asserts this error here is not understandable as the Board never included this period in computing his "years of service." Board concedes that its initial adjudicating unit, the Bureau of Retirement Claims, originally did include this period because of an information form submitted by petitioner, but these years were later dropped and not included in determining the award which petitioner is reviewing here.

█ Point 1–B. Petitioner asserts error by the Board when it ruled that petitioner qualified to obtain credit for service and compensation prior to January 1, 1937, only by reason of Section 1(d) (ii) of the Railroad Retirement Act, rather than because he was in an employment relation on August 29, 1935, by reason of the definition of "employment relation" contained in the Act before the 1946 amendment to the Act. Why he believes he should receive credit for service prior to January 1, 1937, under one section of the Act rather than under another section is not made clear, for, as we read the statute, it makes no difference in petitioner's annuity. The issue appears to be irrelevant. The Board impliedly found petitioner to have been an employee on August 29, 1935 (the so-called "enactment date" of the Railroad Retirement Act, Section 1(j) of the Act, 45 U.S.C.A. § 228a(j) ). Otherwise, under Section 3(b) of the Act, 45 U.S.C.A. § 228c(b), petitioner could not have had credit for his service prior to 1937. Section 1(d) of the Act, 45 U.S.C.A. § 228a (d), provides that "An individual shall be deemed to have been in the employment relation to an employer on the enactment date if * * * (ii) he was in the service of an employer after the enactment date and before January 1946 in each of six calendar months, whether or not consecutive * * *." Petitioner was reemployed by Southern Pacific in 1942 and continued to work for that Company until 1953. Thus, by Section 1(d) of the Act, 45 U.S.C.A. § 228a(d), petitioner received credit for his service *prior* to 1937. Because of this provision, to have credit for his prior service, it was unnecessary for the Board to find that Petitioner was in the "employment relation" (and therefore an employee on

---

1. Petitioner has written his own brief on review. Despite his lack of training in presentation of a legal argument, we have given serious and careful consideration to each question presented by him. However, there is little excuse for the vituperative language by which he abuses the Board. Petitioner "* * * became

thoroughly nauseated * * *" by Board's Brief; he accuses the Board of a "* * * frantic effort to prevent an impartial review of the facts * * *," and accuses the Board of "* * * deliberate lies * * *." The Board merits commendation for its restraint in this matter, and for its clear presentation.

the enactment date for purposes of crediting his service prior to 1937) as that term was defined before the 1946 amendment (60 Stat. 722, 725) to Section 1(d) of the Act, 45 U.S.C.A. § 228a(d). Furthermore, since petitioner did not apply for his annuity until the 1946 amendment became effective, the definition prior to that time would not apply to him.

■ Point 1–C. Petitioner asserts error by the Board in "altering" its records (and ordering accrual of annuities on the basis of such "altered" records) of tax paid compensation and employment some twenty years after the compensation and employment information had been "returned" to the Board. Petitioner contends that the files of the Board showed for nearly 20 years that petitioner and Southern Pacific paid the required taxes and made the required returns covering petitioner's service for the seventeen months from January 1, 1937, to May 31, 1938, during which time petitioner earned $425. Petitioner argues, therefore, that the Board did "defraud" him of the benefits applicable to him for those seventeen months of tax paid service. As discussed above, the Board found that petitioner was not serving Southern Pacific for this period. The applicable statute is Section 8 of the Railroad Retirement Act, 45 U.S. C.A. § 228h.[2] We believe this statute provides that the Board's records shall be conclusive as to the employer and employee in regard to the employee's compensation unless the employer or the employee calls the Board's attention to the error within four years of returning the appropriate information. This statute, as we read it, does not bind the Board after four years so that, many years later, when claim for benefits is made, it *must* pay out substantial benefits on the basis of incorrect reports. The Board cannot reasonably audit and check every return as to accuracy within four years of filing. The Board should be free, when application for annuity is made, to investigate the employment returns submitted to it. The statute does not indicate that the Board *must* accept the accuracy of the report if the Board does not object thereto within four years of filing the report.

■ Point 1–D. Petitioner asserts an unfair hearing before the Board, specifically that the Board erred in denying him timely opportunity to examine or cross-examine witnesses on testimony proposed to be used against him, and to submit rebuttal testimony and argument before a final decision was reached. This claim of error lacks merit. When offered an opportunity by the Appeals Council (a division within the Board) to have a hearing date set in which petitioner could appear in person, petitioner responded, "Only if necessary." Apparently petitioner never found it necessary. Nor should petitioner question the use of documentary evidence, since apparently he did not object to the evidence upon which the decision is based, only to the findings based thereon. It appears that the Board kept petitioner informed of all proceedings in his case, allowed him to submit whatever evidence and arguments

---

**2.** 45 U.S.C.A. § 228h reads: "Employers shall file with the Board, in such manner and form and at such times as the Board by rules and regulations may prescribe, returns under oath of compensation of employees, and, if the Board shall so require, shall furnish employees with statements of their compensation as reported to the Board. The Board's record of the compensation so returned shall be conclusive as to the amount of compensation paid to an employee during each period covered by the return, and the fact that the Board's records show that no return was made of the compensation claimed to will [sic?] have been paid to an employee during a particular period shall be taken as conclusive that no compensation was earned by such employee during that period, unless the error in the amount of compensation returned in the one case, or the failure to make return of the compensation in the other case, is called to the attention of the Board within four years after the last date on which return of the compensation was required to be made."

he chose, and kept him fully informed of all proceedings and actions taken in the case.

Point 1–E. Petitioner asserts error by the Board in computing his annuity for the reason that the Board did not "credit" to him his ten months of (World War I) military service at $160 per month. The Board concedes that the $160 a month was not included in computing his "monthly compensation," but it was excluded because it would have *lowered* his annuity, not *increased* it. Annuities are computed under the Act by multiplying the individual's "years of service" (the 10 months were included in computing this factor) by certain specified percentages of his "monthly compensation." The Act defines each of these in detail. Section 1(f) of the Act, 45 U.S.C.A. § 228a(f); Section 3(c) of the Act, 45 U.S.C.A. § 228c(c). The Board arrived at an average "monthly compensation" for petitioner in the amount of $232.55. Had ten months at $160 each been included, the average monthly compensation would have been lowered below the $232.55 figure used by the Board in determining his annuity. We find no prejudicial error by the Board in following a procedure which enlarges the annuity rather than reduces it.

Point 1–F. Petitioner asserts error by the Appeals Council in evaluation of certain evidence in arriving at a decision, which decision later became the basis of the Board's findings and decision. The Appeals Council is an intermediate appeal unit within the Board, and it seems clear that the Appeals Council's decision is automatically superseded when the Board issues its own decision. Since the Appeals Council's decision was superseded, it would seem to make no difference whether the Appeals Council evaluated evidence correctly or not. Furthermore, the question before this Court on review is not whether the Board reached a "correct" decision, but whether its findings are supported by substantial evidence and whether the decision is based upon a proper interpreta-

tion of the law. The evidence substantially supports the Board's findings, and we find no error in its application of the law.

The decision of the Railroad Retirement Board is affirmed.