Alfred L. JACQUES, Petitioner,

v.

**UNITED STATES RAILROAD RETIRE-
MENT BOARD, and the United States
Government, Respondents.**

**No. 911, Docket 83–4161.**

United States Court of Appeals,
Second Circuit.

Argued March 16, 1984.
Decided May 30, 1984.

Thomas P. O'Sullivan, Delanson, N.Y., for petitioner.

Arthur A. Arfa, General Atty., Railroad Retirement Board, Chicago, Ill. (Edward S. Hintzke, Asst. General Counsel, Steven A. Bartholow, Deputy General Counsel, Washington, D.C., of Counsel), for respondent.

Before FEINBERG, Chief Judge, MANSFIELD and MESKILL, Circuit Judges.

FEINBERG, Chief Judge:

This case concerns petitioner Alfred Jacques's attempts for over a decade to enforce his right to a disability annuity under the Railroad Retirement Act. In 1965, following a long period of service for a railroad covered by the Act, Jacques was seriously injured in the course of his employment. Since the date of the accident, he has been unable to perform his previous occupation. He has not worked at all since 1971. Jacques now seeks review of an August 1982 decision of the Railroad Retirement Board, denying him a disability annuity. For the reasons given below, we find that the Board erred in determining that Jacques had not completed the required period of service to qualify for such an annuity. We reverse the decision of the Board.

I.

On February 19, 1965, Jacques, a thirty-five-year-old assistant signal repairman with the Delaware and Hudson Railway Company, fell from a telegraph pole and suffered a serious injury. He was immediately hospitalized and placed under the care of Dr. Leo Weinstein, whose diagnosis was that Jacques had fractured his ninth thoracic vertebra. Following an initial hyperextension treatment on a fracture board, Jacques was placed in a body cast on February 22. He was discharged from the hospital three days later. After the discharge, Jacques was examined by Dr. Weinstein on several occasions. Dr. Wein-

stein also performed necessary repairs on the cast.

Jacques's cast was replaced by a brace on June 3, 1965. He wore the brace until August 19. Dr. Weinstein stated that Jacques was totally disabled until August 23, 1965, and partially disabled from that date until October 1966.

Jacques returned to work with the railroad on August 23, 1965, and initially attempted to perform his previous work of digging ditches and putting up poles. He found, however, that he was not physically able to do this, and was subsequently reassigned to lighter duties. Jacques has not worked since November 1971.

In September 1969, Jacques filed in the United States District Court for the Northern District of New York a complaint against his railroad employer under the Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 51–60. The complaint alleged that

> while plaintiff was employed as a signal maintainer ... and while he was descending from a wooden pole about twenty-five feet in height equipped with climbers and a belt, upon reaching a point about 12′ or 14′ above the ground he was advised by his co-worker who was on the ground that it was safe for him to proceed, and when he attempted to do so his climbers failed to hold in the pole and he violently fell to the ground ....

Jacques sought $100,000 in damages "for pain and suffering already endured and to be undergone in the future; *for the loss of services and earnings in the past* and those to be sacrificed in the future, for moneys laid out and expended for medicine, medical bills and hospital expenses, treatment and care." (Emphasis added).

The case was settled for $13,500 in October 1970. The settlement did not indicate how the money was allocated to the different categories of damages alleged in the complaint. Jacques then reimbursed the Board $1,213.80 for sickness benefits paid to him by the Board following the accident.

See 45 U.S.C. § 362(*o*). In a letter dated June 21, 1972, the Board acknowledged receipt of the reimbursement. At the time of the accident, Jacques's salary was approximately $400 per month.

In August 1972, Jacques filed with the Board his first application for a disability annuity under the Railroad Retirement Act. Jacques claimed that he was entitled to an annuity under either of two statutory bases set forth in 45 U.S.C. § 231a(a)(1),[1] which provides that:

> The following-described individuals ... shall ... be entitled to annuities ....
>
> ....
>
> (iv) individuals who have a current connection with the railroad industry, whose permanent physical or mental condition is such as to be disabling for work in their regular occupation, and who (A) have completed twenty years of service or (B) have attained the age of sixty; and
>
> (v) individuals whose permanent physical or mental condition is such that they are unable to engage in any regular employment.

Thus, under the latter provision, which we shall refer to hereafter as subsection (v), an individual must show that he is unable to engage in *any* regular employment. But under the former provision, which we shall refer to as subsection (iv), an individual must show only disablement for work in his regular occupation, if he has "completed twenty years of service." Pursuant to regulations in effect at the time, an individual could satisfy the twenty-year requirement of subsection (iv) by completing 234 months of service. 20 C.F.R. § 208.7(a)(3) (amended 1982).

Jacques's first contact with the Board was not successful. In January 1973, the Board's Director of Retirement Claims denied Jacques's application for a disability annuity on the grounds that (1) with regard to subsection (v), he was not "permanently disabled for all regular work," and (2) he was not eligible under subsection (iv) be-

---

**1.** The Railroad Retirement Act was amended and recodified in 1974. Except where otherwise relevant, we cite to the recodified provisions.

cause he had completed only 230 months of regular employment and was thus four months short of the required length of service. The denial notice did not set out the formal steps to be followed in seeking administrative and judicial review of the adverse decision. Instead, it merely stated that a claimant dissatisfied with the decision could contact the nearest Board office.

The record suggests that Jacques attempted to seek a reconsideration of the Board's initial decision. Jacques's file with the Board contains a copy of a 1973 letter from Jacques to Senator Jacob Javits, and a letter from the Board to Senator Javits dated February 23, 1973. These letters are not part of the administrative record before us but were described by a Board referee at an April 1978 hearing—which is before us and which we discuss below—and apparently dealt with the denial of the disability annuity. The record also indicates that Jacques was under the impression that he was pursuing the administrative remedies available to him under the Railroad Retirement Act.

During 1974, Jacques communicated intermittently with the Board, arguing that he had filed an appeal from the Board's 1973 decision. The Board replied that no appeal had been filed and that the period for filing such an appeal had expired.

In December 1975, Jacques filed a new application for a disability annuity. This second application was also denied. Jacques was informed that (1) he was not "permanently disabled for all regular work" under subsection (v), and (2) he was not eligible under subsection (iv) because he had not completed the required period of service. This time, however, Jacques was credited with 231 months of service—up from 230 months in the previous application—and was thus only three months short of the subsection (iv) requirement.

Jacques appealed from this decision, and in April 1978 he appeared pro se before a referee of the Board's Bureau of Hearings and Appeals. The referee stated at the

hearing that Jacques would probably have been awarded an annuity in 1973 if he had only completed the required period of railroad service. Jacques disputed the Board's contention that he could not be credited with 234 months service, but the referee made no effort to elicit answers that might indicate the source of the discrepancy. In June 1978, the referee sustained the denial decision. She stated:

> The appellant's complaints have been persistent and the objective and radiographic findings made in 1976 would preclude work in a heavy, arduous occupation. The impairments, however, were not shown to be of such severity as to prevent the appellant from engaging in a light work activity such as small parts assembler or inspector in any industry.

Despite this implicit finding that Jacques could not perform his former job as a signal repairman, the referee did not even address Jacques's argument that his length of railroad service was sufficient for a subsection (iv) annuity. Instead, the referee focused exclusively on the question of total disability for the purposes of subsection (v) and sustained the denial decision.

The referee's decision was affirmed by the Board in November 1980. In its opinion, the Board found that Jacques had "the functional capacity to do some light or sedentary work such as simple bookkeeping and payroll clerical work," but concluded that the condition was not "so severe as to permanently disable him for all regular employment." Like the referee, the Board failed to address the question of Jacques's length of service.

Before recounting the third—and last—attempt by Jacques to enforce his rights under the Railroad Retirement Act, it is useful to step aside and review a parallel development. While the various proceedings before the Board were taking place, Jacques applied for Supplemental Security Income (SSI) benefits under the Social Security Act.[2] In November 1976, Jacques

---

2. The purpose of the SSI program is "to assure that recipients' income is maintained at a level viewed by Congress as the minimum necessary" for subsistence. *Whaley v. Schweiker,* 663 F.2d

received a favorable decision. The opinion of the Administrative Law Judge (ALJ) stated that

> [t]he evidence as a whole is quite clear and consistent to the effect that claimant's back had been seriously and permanently affected and injured when he fell down a pole in 1965. Since that time, really heavy work was out of his reach and he could stay on as an employee of the Delaware and Hudson Railroad only because considerable concessions were made to him after the accident both in terms of the kind of work he performed subsequently and the absences that were tolerated. It appears that after his legal action relating to the accident was settled ... the employer was less disposed to make these concessions. Thus in November 1971, the claimant lost his job on the stated ground that he couldn't do the work.

The ALJ found that, as of the date of the hearing held August 3, 1976, Jacques "was no longer able to engage in substantial gainful services," as "he could not even do light work" and was thus disabled for the purposes of the Social Security Act. He found, however, that prior to that date, Jacques was able to engage in light work "such as catalog selling by telephone as well as simple bookkeeping and payroll work."

Eventually this became the decision of the Secretary of Health, Education and Welfare (HEW), and Jacques appealed from it, challenging the date of onset of his disability. A panel of this court affirmed the finding of disability but found no evidence in the record to support the finding that, prior to the hearing, Jacques could perform light work. It ordered HEW to award Jacques disability benefits beginning on November 3, 1975. *Jacques v. Secretary of Health, Education and Welfare*, 633 F.2d 204 (2d Cir.1980). In his appeal to the Railroad Retirement Board from the referee's June 1978 decision, Jacques brought to the Board's attention the award of disability benefits by HEW.[3]

After this brief interlude, we return to Jacques's attempt to obtain a railroad disability annuity. In March 1982, Jacques moved in this court to enlarge the record for the purposes of a petition to review the Board's November 1980 decision. A panel of this court remanded the case to the Board for consideration of the new evidence that Jacques was attempting to introduce. *Jacques v. United States Railroad Retirement Board*, No. 81–4237 (2d Cir. May 18, 1982).

Among the arguments raised by Jacques on remand before the Board were: first, that he had completed at least 234 months of railroad service and thus qualified for a disability annuity under subsection (iv); and, second, that the finding of disability by HEW was binding on the question of Jacques's inability "to engage in any regular employment" for the purposes of subsection (v). The Board filed its decision in August 1982. On the question of Jacques's eligibility for benefits under subsection (iv), the Board found that Jacques had completed 228 months of railroad service and three months of military service for a total of 231 months of creditable railroad service. The Board acknowledged that under the Railroad Retirement Act a claimant can be credited "for time lost" if "he is paid by an employer with respect to an identifiable period of absence from the active service of the employer," 45 U.S.C. § 231(h)(2); that Jacques lost five months of service during

---

871, 873 (9th Cir.1981). To qualify for the program, an individual must be "aged, blind, or disabled" and must meet stringent income and resources standards. 42 U.S.C. § 1382(a).

**3.** There is no problem here of "double-dipping." An annuity under the Railroad Retirement Act is considered "countable income" for the purposes of SSI eligibility. 20 C.F.R. §§ 416.1104, 416.1121. Thus, given the very low income level at which an individual ceases to be eligible for SSI, Jacques will most probably lose his SSI benefits if he is awarded the annuity that he seeks. Even if he still met the eligibility standards, his SSI benefits would be reduced by his disability annuity. 42 U.S.C. § 1382(b).

1965;[4] and that the $13,500 settlement in 1970 with the Delaware and Hudson Railway Company was related to the 1965 accident. The Board found, however, that this could not be considered "pay for time lost" because "it is not clear that any part of the settlement 'includes pay for time lost.'" The Board also concluded that, in any event, 45 U.S.C. § 231h precluded the crediting of additional time because Jacques had not brought this matter to the Board's attention within the period required by the statute.

On the issue of Jacques's eligibility under subsection (v), the Board acknowledged that the disability standard of that provision (inability to perform *any* regular work) is similar to the disability standard of the Social Security Act. However, the Board stated:

> The Board has a different record before it than was before the Second Circuit when it reviewed the Supplemental Security Income proceeding. Consequently, the Board is free to make its own independent determination in regard to the question of disability on the basis of all the evidence now before it.

The Board concluded that Jacques was not disabled within the meaning of subsection (v). Jacques now petitions for review of the decision of the Board, pursuant to 45 U.S.C. § 231g.

## II.

We first consider the proper scope of judicial review in this case. The standard for review under 45 U.S.C. § 231g is set out in 45 U.S.C. § 355(f), which provides that the Board's findings of fact "if supported by evidence and in the absence of fraud, shall be conclusive." Construing this provision, courts have uniformly held that "substantial evidence" and not mere "evidence" is required to sustain a finding of fact of the Board. *Bertamini v. Railroad Retirement Board*, 440 F.2d 278, 280 (D.C.Cir.1971). The Board acknowledges

that "substantial evidence" is the proper standard to be applied in this case, see, e.g., *Chandler v. United States Railroad Retirement Board*, 713 F.2d 188, 189 (6th Cir.1983) (per curiam); *Kirkland v. Railroad Retirement Board*, 706 F.2d 99, 104 (2d Cir.1983); *Williams v. United States Railroad Retirement Board*, 585 F.2d 341, 343 (8th Cir.1978) (per curiam).

■ We dispense with any recitation of cases defining "substantial evidence" because it is clear to us that, under any reasonable definition of that phrase, we must set aside the Board's implicit finding that Jacques's $13,500 settlement with his railroad employer, the Delaware and Hudson Railway Company, was not "for time lost" within the meaning of 45 U.S.C. § 231(h)(2). We begin by examining that section, which provides:

> If a payment is made by an employer with respect to a personal injury and includes pay for time lost, the total payment shall be deemed to be paid for time lost unless, at the time of payment, a part of such payment is specifically apportioned to factors other than time lost, in which event only such part of the payment as is not so apportioned shall be deemed to be paid for time lost.

Next, we note that one of the grounds on which Jacques sought damages in the FELA case, as the complaint in that action makes clear on its face, was "loss of services and earnings in the past ...." The settlement in the FELA case was not broken down by categories of damages and must thus be treated as compensation for each of the damages alleged in the complaint, including "time lost." Under the provisions of section 231(h)(2), the whole payment is therefore deemed to have been for time lost, although it is only necessary for Jacques to establish that a small fraction of the payment was for that purpose. Since Jacques's monthly salary at the time of the accident was approximately $400, a five-month absence from work would have

---

**4.** Although Jacques was out of work for six months, he lost only five months of service because he received credit for the months of February and August 1965, as he was able to work during parts of those months. See 20 C.F.R. § 220.2.

resulted in approximately $2,000 in lost wages. Thus, the $13,500 settlement was clearly sufficient to cover five months of "pay for time lost." The Board's finding that no part of the settlement included "pay for time lost," was not supported by substantial evidence, as we point out below. Indeed, the Board seems to have relied primarily on the absence of evidence, which could have easily been remedied by obtaining the FELA complaint and glancing at it. As a result, it is clear that Jacques should have been credited with a total of 236 months of service: 228 months of actual railroad service and 3 months of military service, as the Board found, and 5 months for "time lost," 45 U.S.C. § 231(f)(1).

■■■ It is true that the crucial document in this reasoning—Jacques's complaint in the FELA case—was not, to the amazement of this panel, obtained by anyone during these drawn-out administrative proceedings. Yet, we do not think that on these facts we are precluded from relying on this document, even though it is not part of the administrative record. We realize that, having ascertained from the record before us that such a document is relevant, the usual course would be to remand the case to the Board for consideration of the document and for further findings. 45 U.S.C. § 355(f). In general, a reviewing court cannot consider evidence that was not part of the record before the Board. Id.

Given the particular facts of this case, however, we do not feel compelled to remand. First, no purpose would be served by remanding with instructions to consider whether, in light of the FELA complaint, Jacques sought compensation "for time lost." As we have already indicated, given the text of the complaint, there is no possibility that reasonable minds would differ on this question. If the issue were less clear-cut, we would not make a decision without a remand because we realize that, under the scope of review set forth in 45

U.S.C. § 355(f), we can set aside a finding of the Board only if it is not supported by substantial evidence, not merely because we would have decided the issue differently if we had been the triers of fact. But, given the clarity of the language of the complaint, even the substantial evidence standard would not save a Board finding that Jacques did *not* seek compensation "for time lost."

■■ Second, the complaint is a pleading and official court record of an inferior court in our jurisdiction in a case that is related to this one. Thus, we can take judicial notice of it. See, e.g., *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir.1980); *Commonwealth of Pennsylvania v. Brown*, 373 F.2d 771, 778 (3d Cir. 1967); *Wagner v. Fawcett Publications*, 307 F.2d 409, 411 (7th Cir.1962), cert. denied, 372 U.S. 909, 83 S.Ct. 723, 9 L.Ed.2d 718 (1963); 9 C. Wright & A. Miller, Federal Practice and Procedure § 2410, at 359–61 & nn. 67–68 (1983).

Third, we are reluctant to remand a case in which Jacques has battled with the Board in one forum or another for over eleven years, in which the Board has already issued three "final" decisions, and in which the Board has had ample opportunity to obtain the FELA complaint, which we secured (as any of the interested parties could have) simply by contacting the office of the Clerk of the United States District Court for the Northern District of New York. Cf. *NLRB v. Jamaica Towing, Inc.*, 632 F.2d 208, 216 (2d Cir.1980) ("At this late date, almost five years after the events at issue, no useful purpose would be served by a second remand. In our view the [NLRB], despite a full opportunity to remedy basic deficiencies in the record, has failed to do so."). Finally, we note that the parties did not object at oral argument to our request that the complaint in the FELA action be obtained and that the contents of the complaint are not subject to dispute. Cf. Fed.R.Evid. 201(b), (e).[5]

---

**5.** After obtaining the complaint, we instructed the Clerk of our court to send a copy to the parties and to inform them that we intended to

take judicial notice of this document. We also gave the parties opportunity to object to or comment on the procedure that we intended to

■ But even if we did not consider the complaint in the FELA action, we would still have to set aside the Board's implicit finding of no "pay for time lost." The Board found that Jacques lost five months of service in 1965. It also found that the $13,500 settlement was related to an injury that Jacques suffered in 1965. Finally, it found that after receiving the settlement, Jacques reimbursed the Board for the sickness benefits he had received from the Board subject to a lien under 45 U.S.C. § 362(*o*). The Board found, however, that "it is not clear that any part of the settlement 'includes pay for time lost.'"

In this appeal, the Board advances a number of arguments in support of its position that Jacques should not be credited for lost time. The Board argues that there is substantial evidence "that there was in fact no lost time due to the injury." The supposedly "substantial" evidence consists of two items. The first is a September 1969 letter to Jacques from his attorney in the FELA action. The letter asks Jacques to submit to a medical examination by Dr. Louis Cohen. The Board focuses on a sentence in that letter, which states: "My notes which I took from you on August 13 last do not indicate any lost time, and if there was any please let me know." The second item is a series of reports prepared for the New York Workman's Compensation Board between December 1966 and June 1969, which indicate "no lost time."

It is clear that Jacques's FELA attorney was merely posing a question, and that the answer he received—in the form of a report from Dr. Cohen, which quotes from reports Dr. Weinstein, the treating doctor in 1965, made following the accident—conclusively establishes that Jacques was out of work for six months as a result of the injury. With respect to the Workman's Compensation forms, all they indicate is that there was "no lost time" during the

period covered by the reports: September 1966 to June 1969. Moreover, we do not see how the Board can rely on these reports, made by a physician who had never treated Jacques before September 1966— one and a half years after the accident— and ignore the report of Dr. Weinstein, Jacques's treating physician immediately following the accident. Finally, we note that the Board's attempt to argue that there is substantial evidence "that there was in fact no time lost due to the injury" is in itself improper because the Board never made such a finding.

The Board also argues that reimbursement of the Board in the 1970 settlement of the FELA action for the sickness benefits previously paid to Jacques is not evidence that he lost time as a result of a railroad injury. The Board states: "The injury which incapacitates a claimant so as to entitle him or her to sickness benefits may be based on an on-the-job railroad injury or an off-the-job slip in the home or a traffic accident." The Board, however, ignores that such sickness benefits are reimbursed to the Board only if the railroad employee subsequently recovers money based upon the infirmity that led to the award of benefits. 45 U.S.C. § 362(*o*). The record clearly shows that Jacques received the $13,500 from his railroad employer. Thus, the Board's suggestion that the injury may have resulted from an "off-the-job slip" or a "traffic accident" makes little sense. It is difficult to see why the railroad employer would have been liable for such an accident.

Finally, we note that, in the absence of specific substantial evidence to the contrary, any reasonable mind would decide that compensation paid (1) by an employer, (2) to an employee, (3) for an accident that took place while the employee was performing his regular duties, and (4) that

follow. The Board objected, relying primarily on 45 U.S.C. § 355(f), which states in pertinent part:

No additional evidence shall be received by the court, but the court may order additional evidence to be taken before the Board....

As we have indicated in the text of this opinion, however, we believe that the procedure we follow here is appropriate on this record.

caused the employee to be out of work for six months is compensation paid—at least in part—for lost time. To suggest otherwise is to strain logic well beyond its breaking point. Whatever else "substantial evidence" might mean, it does not mean evidence that will support a finding only if farfetched, unreasonable inferences are made. Any other view would make "substantial evidence" a hollow phrase and turn judicial review into a mere rubber stamp for agency action.

### III.

■ Next we consider the Board's argument that Jacques waived the right to have additional time credited by failing to bring to the Board's attention, within the prescribed period, the error in the computation of his creditable service. The Board relies on 45 U.S.C. § 231h, which provides:

> Employers shall file with the Board ... returns of compensation of employees, and, if the Board shall so require, shall furnish employees with statements of their compensation as reported to the Board. The Board's record of compensation so returned shall be conclusive as to the amount of compensation paid to an employee during each period covered by the return, and the fact that the Board's records show that no return was made of the compensation claimed to have been paid to an employee during a particular period shall be taken as conclusive that no compensation was paid to such employee during that period, unless the error in the amount of compensation returned in the one case, or the failure to make return of the compensation in the other case, is called to the attention of the Board within four years after the day on which return of the compensation was required to be made.

The Board argues that the Delaware and Hudson Railway Company, Jacques's railroad employer, should have reported in 1971 the lost time for which Jacques was compensated in the 1970 settlement, and that Jacques should have brought any error to the attention of the Board by 1976.

According to the Board, since Jacques did not do so, section 231h "prevents any change now to be made to Mr. Jacques' reported service."

The Board's position is incorrect. Under 45 U.S.C. § 231h, the Board's records are ordinarily conclusive as to the employer and employee. However, the provision does not bind the Board, which can correct the records beyond the four-year period, to ensure their accuracy. See *Taylor v. Finch*, 418 F.2d 1232, 1234 (8th Cir.1969), cert. denied, 397 U.S. 1055, 90 S.Ct. 1397, 25 L.Ed.2d 671 (1970); *Gerend v. Railroad Retirement Board*, 248 F.2d 357, 360 (9th Cir.1957); cf. *Hollman v. Department of Health & Human Services*, 696 F.2d 13, 15–17 (2d Cir.1982). Moreover, in this case, the Board was notified of the basic facts well within the period suggested by the Board, when Jacques reimbursed it for the sickness benefits that he had received; the Board acknowledged receipt of this reimbursement in June 1972. As we have already noted, the Board should have considered the settlement that led to the reimbursement to be, at least in part, pay for time lost. In addition, it is not clear that the section 231h requirement applies to money received for time lost as a settlement in a FELA action, as opposed to money received as wages. For all of these reasons, we hold that section 231h does not prevent crediting Jacques with an additional five months of service, for a total of 236 months of creditable railroad service.

### IV.

■ Having determined that the Board erred in failing to credit Jacques with 236 months of service, we must still consider the proper disposition of this case. Under 45 U.S.C. § 355(f), we have the power "to enter a decree affirming, modifying, or reversing a decision of the Board, with or without remanding the case for rehearing." In this case, it is absolutely clear that as a result of a "permanent physical ... condition," in the words of subsection (iv), Jacques cannot work in his "regular occupation" as a signal repairman, and has not

been able to do so since 1965. The record contains no evidence to the contrary—and, in contrast, contains a great deal of evidence suggesting that Jacques cannot perform any work at all. Moreover, the Board has never found, and it does not argue now, that Jacques could do anything more strenuous than "light work." The jobs that the Board has suggested, over the years, that he can perform—small parts assembling, inspecting, simple bookeeping and payroll clerical work—are certainly not comparable in terms of the need for physical exertion to Jacques's pre-accident job of digging ditches and putting up poles. Thus, there is no need for a remand on the question of Jacques's ability to perform his "regular occupation." See *Kelly v. Railroad Retirement Board*, 625 F.2d 486, 495–96 (3d Cir.1980); *Andrews v. Railroad Retirement Board*, 595 F.2d 676, 685 (D.C. Cir.1978); *Parker v. Railroad Retirement Board*, 441 F.2d 460, 464 (7th Cir.1971). Since the record makes clear that Jacques has completed over 234 months of railroad service and is unable to perform his "regular occupation," he is eligible for an annuity under subsection (iv).

We accept the Board's argument that if we should decide to reverse the Board's decision and award Jacques a disability annuity, his annuity—based on an application filed in December 1975—cannot begin before December 1, 1974.[6] See 45 U.S.C. § 231d(a). Thus, we reverse the decision of the Board and remand the case to the Board with instructions to award Jacques an annuity forthwith, pursuant to 45 U.S.C. § 231a(a)(1)(iv), beginning on December 1, 1974.[7]

---

**6.** Jacques argues that the relevant benchmark is his first application, filed in August 1972, even though he did not perfect an appeal from the adverse initial decision of January 1973 within the one year prescribed by the regulations then in force. 20 C.F.R. § 2602(b) (amended 1979). The argument is a substantial one. We note that the denial notice did not set out the procedures for seeking administrative review, that the correspondence with Senator Javits can be regarded as an informal inquiry about the denial and that the record does not indicate whether the Board ever informed Jacques of his right to appeal. We also note that even though Jacques pointed out at his April 1978 hearing that he had attempted to appeal from the 1973 initial decision, the referee's report is silent on this question. Nevertheless, we reluctantly conclude that we do not have the power to consider these

questions in reviewing the denial of an application filed in December 1975.

**7.** In view of our disposition, we need not consider the questions whether the Board's finding that Jacques is not disabled for the purposes of subsection (v) is supported by substantial evidence, and whether the Board erred in not explaining with particularity the reasons why this finding was at odds with the determination of HEW, which was affirmed by this court. Also, we need not consider Jacques's argument that the substantial evidence standard is not appropriate in this case because the Board committed fraud. Finally, we note that under 45 U.S.C. § 355(f), we cannot award Jacques the compensatory and punitive damages, and other forms of relief that he seeks.