Keith G. MIERNICKI, Petitioner,

v.

RAILROAD RETIREMENT
BOARD, Respondent;

and

Duluth Missabe and Iron Range
Railway Company, Inc.

No. 93–3342.

United States Court of Appeals,
Eighth Circuit.

Submitted March 22, 1994.

Decided April 1, 1994.

Appellant, pro se.

Arthur A. Arfe, Chicago, IL, for appellee.

Before FAGG, WOLLMAN, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

MORRIS SHEPPARD ARNOLD, Circuit Judge.

While Keith Miernicki was working for the Duluth Missabe and Iron Range Railway Company, he was injured on the job. Between early 1983 and late 1984, he was off work for approximately 19 months because of his injuries. Railroad workers who are injured on the job may receive compensation for those injuries under either the Longshore and Harbor Workers' Compensation Act (LHWCA), if they were working in connection with an enterprise related to navigable waters, *see* 33 U.S.C. §§ 901–950, especially § 903(a), or the Federal Employers' Liability Act (FELA), for all other railroad workers, *see* 45 U.S.C. §§ 51–60, especially § 51. Mr. Miernicki received payments under the LHWCA during the time he was off work because of his injuries.

Mr. Miernicki evidently applied for a retirement annuity from the railroad in 1989. *See* 45 U.S.C. § 231a(a)(1). He needed 10 years of service to be eligible. Although he claimed that he had worked for the railroad from early 1978 through mid–1988, the railroad did not give him credit for the time he was off work in 1983 and 1984, and thus, according to the railroad, he did not have the requisite 10 years of service. The Railroad Retirement Board, a federal administrative agency, upheld that calculation by the railroad. It is Mr. Miernicki's protest of that calculation that prompted this petition.

## I.

In the statute governing railroad retirement annuities, "years of service" are defined as the time an employee "rendered service ... for compensation" or "received remuneration for time lost." *See* 45 U.S.C. § 231(f)(1). "Compensation" includes "remuneration paid for time lost as an employee," *see* 45 U.S.C. § 231(h)(1), but does *not* include "the amount of any payment ... made to ... an employee ... on account of sickness or accident disability," *see* 45 U.S.C. § 231(h)(6)(v). For purposes of computing the amount of an annuity, "compensation" "includes any payment from any source to an employee ... *if* such payment is subject" to railroad retirement fund tax withholding or income tax withholding (emphasis supplied). *See* 45 U.S.C. § 231(h)(8). Under the tax code, "the amount of any payment ... made to ... an employee ... on account of sickness or accident disability" is *not* subject to railroad retirement fund tax withholding or income tax withholding, *see* 26 U.S.C. § 3231(e)(1)(i), if it is "received under a workmen's compensation law," *see* 26 U.S.C. § 3231(e)(4)(A)(i).

■ The Railroad Retirement Board held that because payments under the LHWCA are a type of workers' compensation, *see, e.g., Director, Office of Workers' Compensation Programs v. Perini North River Associates,* 459 U.S. 297, 307, 309, 103 S.Ct. 634, 643, 74 L.Ed.2d 465 (1983), the money received by Mr. Miernicki in 1983 and 1984 was not

associated with creditable years of service. In light of the language in the statute governing railroad retirement annuities and the language in the tax code, the Railroad Retirement Board's construction of the statute governing railroad retirement annuities—that the months while Mr. Miernicki received payments under the LHWCA are not creditable toward years of service—is reasonable and must, therefore, be upheld. *See, e.g., Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–45, 104 S.Ct. 2778, 2781–83, 81 L.Ed.2d 694 (1984).

Mr. Miernicki argues, however, that if he had been injured in a locale that did *not* confer jurisdiction under the LHWCA, he could have recovered his lost wages under the FELA, and that that recovery would be considered a payment associated with creditable years of service. *See, e.g., Jacques v. United States Railroad Retirement Board,* 736 F.2d 34, 39–42 (2d Cir.1984). He contends, then, that solely because he was injured in a locale that *did* confer jurisdiction under the LHWCA, it is unfair for the payments he received instead of wages not to be associated with creditable years of service. We disagree that payments under the LHWCA and under the FELA are comparable. Liability under the LHWCA is strict, *see* 33 U.S.C. § 903(a); liability under the FELA is conditional upon negligence, *see* 45 U.S.C. § 51.

■ To the extent that Mr. Miernicki is raising some type of constitutional equal protection argument with respect to the application of the statute governing railroad retirement annuities (distinguishing between railroad workers who are never injured, or who are injured because of the railroad's negligence, from those injured but compensated under the LHWCA), moreover, we consider that distinction at least as rational as the distinction—with respect to all persons who had worked between 10 and 25 years in the railroad industry as of 1975—between those with recent work in the railroad industry, who receive higher retirement benefits, and those without recent work in the railroad industry, who receive lower retirement benefits. The Supreme Court has upheld as constitutional a differentiation in benefits between those two classes of workers, stating that as long as a statute could have some reasonable basis (and does not "burden fundamental constitutional rights or create 'suspect' classifications, such as race or national origin"), *United States Railroad Retirement Board v. Fritz,* 449 U.S. 166, 174, 101 S.Ct. 453, 459, 66 L.Ed.2d 368 (1980), the statute will not be invalidated on equal protection grounds. *Id.* at 175, 101 S.Ct. at 459–60. In our case, Congress could have concluded that it was more equitable to credit years of service for workers who were injured through the negligence of their railroad employer than for workers who were injured regardless of whether or not their railroad employer was negligent. That conclusion, in our view, is not "patently arbitrary," *id.* at 178, 101 S.Ct. at 461. Where "plausible reasons" can be suggested for the lines drawn by a statute, "our inquiry is at an end." *Id.* at 179, 101 S.Ct. at 461.

## II.

In 1986, Mr. Miernicki sued the railroad, claiming damages under the FELA for his injuries and lost wages. Later that year, he settled the lawsuit for $2,500 and signed a release of all FELA claims against the railroad. The Railroad Retirement Board held that the release did not contain language that designated the $2,500 paid as including some amount for lost wages from 1983 and 1984 and therefore that the FELA settlement offered no basis for crediting toward years of service the time Mr. Miernicki was off work because of his injuries. Mr. Miernicki's second argument is that the release could be construed the opposite way as well.

■ Our standard of review, however, is not whether the release may be so construed but, instead, whether the Railroad Retirement Board's determination is supported by substantial evidence. *See, e.g., Williams v. Railroad Retirement Board,* 585 F.2d 341, 343 (8th Cir.1978) (*per curiam*). The regulation governing whether payments may be attributable to lost wages states that a "reasonable relationship to an employee's normal monthly pay is ordinarily no less than ten times the employee's daily pay rate." *See* 20 C.F.R. § 211.3(b). The Railroad Retirement

Board followed that regulation, and therefore we hold that the record contains substantial evidence to support the Railroad Retirement Board's conclusion that the $2,500 was in exchange only for an agreement by the railroad not to challenge the jurisdiction under the LHWCA of Mr. Miernicki's claims and did not include an amount allocable to lost wages.

### III.

For the reasons stated, we affirm the decision of the Railroad Retirement Board and deny Mr. Miernicki's motion for the appointment of a lawyer (we note that he is not proceeding *in forma pauperis* ).