# IN THE SUPREME COURT OF IOWA

No. 13–0729

Filed June 27, 2014

**RUSSELL PHILLIPS,**

    Appellant,

vs.

**CHICAGO CENTRAL & PACIFIC RAILROAD COMPANY,**
a Delaware Corporation,

    Appellee.

---

Appeal from the Iowa District Court for Pottawattamie County, Mark Eveloff, Judge.

A railroad employee appeals a district court order finding an employer satisfied the judgment in a case filed pursuant to the Federal Employers' Liability Act. **AFFIRMED.**

Richard D. Crotty, Council Bluffs, and Christopher W. Bowman of Yaeger, Jungbauer & Barczak, P.L.C., St. Paul, Minnesota, for appellant.

R. Todd Gaffney, Kellen B. Bubach, and Eric G. Hoch of Finley, Alt, Smith, Scharnberg, Craig, Hilmes & Gaffney, P.C., Des Moines, for appellee.

Nicholas A. Klinefeldt, United States Attorney, and William C. Purdy, Assistant United States Attorney, and Marion E.M. Erickson and Jonathan S. Cohen, Washington, D.C., for amicus curiae United States of America.

**APPEL, Justice.**

In this case, we must determine the tax consequences of a general verdict under the Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 51–60 (2006). A railroad employee filed a negligence action against a railroad and obtained a favorable general jury verdict. The employer withheld a portion of the subsequent award to pay taxes allegedly due under the Railroad Retirement Tax Act (RRTA), 26 U.S.C. §§ 3201–3241, and paid the balance to the employee. When the employee refused to sign a satisfaction of judgment, the railroad sought an order of satisfaction from the district court.

The employee resisted the motion for an order of satisfaction on several grounds. First, the employee claimed an award for "time lost" was not taxable compensation under the RRTA. Second, the employee claimed that even if compensation for time lost is taxable, because there is no way to determine the portion of the general verdict allocable to lost income, the employer was not entitled to withhold any amount for payment of taxes. Finally, the employee claimed that the railroad had not fully satisfied the judgment.

The district court ruled in favor of the railroad. The employee appeals. For the reasons expressed below, we affirm.

## I. Factual and Procedural Background.

Russell Phillips was an employee of the Chicago Central & Pacific Railroad. His last day of work was in April of 2008. During the last three years of his employment, Phillips was diagnosed with a number of conditions, including chronic bursitis of the shoulder; acute and chronic degenerative osteoarthritis of the cervical, thoracic, and lumbosacral spine; shoulder sprain/strain; acute ulnar neuropathy; acquired chronic

spondylolisthesis; rotator cuff disease on the right shoulder; and bilateral carpal tunnel syndrome.

In October 2008, Phillips filed a claim against the railroad under FELA. Phillips alleged that while employed by the railroad he was injured as a result of the railroad's negligence in failing to provide him with a safe workplace and in failing to provide him with reasonably safe equipment. Phillips sought a wide variety of damages, including damages for lost past and future wages. The jury was instructed to consider whether Phillips was entitled to recover damages for medical expenses, lost wages, future earning capacity, loss of bodily functions, and physical and mental pain and suffering.

The jury returned a general verdict in favor of Phillips in the amount of $940,905.10. Because the jury found Phillips eighty percent at fault for his injuries, the district court entered judgment in favor of Phillips in the amount of $188,181.02 plus interest. The railroad paid Phillips the amount of the judgment less $10,546.92, which it withheld for payment to the Internal Revenue Service (IRS) under the RRTA.

When the railroad requested Phillips execute a satisfaction of judgment, he refused to sign on the ground the railroad should not have withheld any amount for tax purposes. In response, the railroad filed a motion with the district court for an order of satisfaction and discharge of judgment.

The district court sustained the railroad's motion for satisfaction and discharge of judgment. According to the district court, the sole issue before it was whether an employer may withhold a portion of a plaintiff's general verdict award to pay RRTA payroll taxes. In order to answer this general question, the district court made two conclusions. First, the district court concluded payments for time lost amounted to taxable

compensation for the purposes of the RRTA. Second, the district court concluded a general verdict is considered pay for time lost in its entirety under the RRTA unless part of the award is specifically allocated to other factors.

## II. Discussion.

**A. Overview of Applicable Statutory and Administrative Framework.** We begin our discussion with an overview of the applicable statutory and administrative framework. The Railroad Retirement Act (RRA) of 1974, 45 U.S.C. §§ 231–231v, provides a system of retirement and disability benefits for those who pursue careers in the railroad industry. *Hisquierdo v. Hisquierdo*, 439 U.S. 572, 573, 99 S. Ct. 802, 804, 59 L. Ed. 2d 1, 6 (1979). The Railroad Retirement Board (RRB) administers RRA benefits. 45 U.S.C. § 231f(a). Generally, the RRA applies to railroad companies and their employees. *See* 45 U.S.C. § 231(a)(1)–(2) (defining "employer"); *id.* § 231(b)(1)–(2) (defining "employee").

Taxes collected under the RRTA fund certain RRA benefits, or as one court put it, the RRA represents "the expenditure side of the coin" and the RRTA "is the revenue side." *Standard Office Bldg. Corp. v. United States*, 819 F.2d 1371, 1373 (7th Cir. 1987); *see also Hisquierdo*, 439 U.S. at 574 & n.2, 99 S. Ct. at 804 & n.2, 59 L. Ed. 2d at 6 & n.2. Under the RRTA, both railroad employees and their employers pay a tax to the IRS. *See* 26 U.S.C. § 3201 (tax on employees); *id.* § 3221 (tax on employers). Thus, the RRTA "is to the railroad industry what the Social Security Act is to other industries: the imposition of an employment or payroll tax on both the employer and the employee, with the proceeds used to pay pensions and other benefits." *Standard Office Bldg. Corp.*, 819 F.2d at 1373.

The RRTA provides that employers must collect applicable taxes "by deducting the amount of the taxes from the compensation of the employee as and when paid." 26 U.S.C. § 3202(a). The RRTA imposes two tiers of taxation on compensation earned by railroad workers. *See* 26 U.S.C. § 3201. Tier 1 taxes under the RRTA fund benefits corresponding to Social Security and Medicare benefits and are calculated using the applicable Social Security and Medicare tax formulas. *See id.* § 3201(a); *see also id.* § 3101(a)–(b); *Hisquierdo*, 439 U.S. at 574, 99 S. Ct. at 804–05, 59 L. Ed. 2d at 6. Tier 2 taxes fund a separate annuity that is equivalent to a private pension benefit. *See* 26 U.S.C. § 3201(b); *Heckman v. Burlington N. Santa Fe Ry.*, 837 N.W.2d 532, 539 (Neb. 2013); *see also Hisquierdo*, 439 U.S. at 574–75, 99 S. Ct. at 804–05, 59 L. Ed. 2d at 6–7; *Bowman v. Stumbo*, 735 F.2d 192, 196 n.7 (6th Cir. 1984); *Atchison, Topeka & Santa Fe Ry. v. United States*, 628 F. Supp. 1431, 1433 (D. Kan. 1986).

The RRA and the RRTA employ different definitions of "compensation." The RRA's definition specifically includes payments for time lost. *See* 45 U.S.C. § 231(h)(1). It provides:

> The term "compensation" means any form of money remuneration paid to an individual for services rendered as an employee to one or more employers or as an employee representative, *including remuneration paid for time lost as an employee*, but remuneration paid for time lost shall be deemed earned in the month in which such time is lost.

*Id.* (emphasis added). The RRA also addresses whether payments for personal injury are considered compensation and how to calculate the amount of a payment that is considered compensation for time lost. *See id.* § 231(h)(2). The RRA provides:

> An employee shall be deemed to be paid "for time lost" the amount he is paid by an employer with respect to an identifiable period of absence from the active service of the

employer, including on account of personal injury . . . .  If a payment is made by an employer with respect to a personal injury and includes pay for time lost, *the total payment shall be deemed to be paid for time lost unless, at the time of payment, a part of such payment is specifically apportioned to factors other than time lost*, in which event only such part of the payment as is not so apportioned shall be deemed to be paid for time lost.

*Id.* (emphasis added).

The RRTA employs a different definition of compensation.  *See* 26 U.S.C. § 3231(e).  In pertinent part, the RRTA defines compensation generally as: "any form of money remuneration paid to an individual for services rendered as an employee to one or more employers."  *Id.*  Thus, unlike the RRA, the RRTA does not currently explicitly address the tax consequences of remuneration for time lost.

Though the RRTA does not explicitly address the tax consequences of remuneration for time lost, it did prior to amendments in 1975 and 1983.  Before these amendments, the RRTA defined compensation in a fashion similar to the current definition in the RRA.  The RRTA formerly provided:

(1) The term "compensation" means any form of money remuneration earned by an individual for services rendered as an employee to one or more employers, or as an employee representative, including remuneration paid for time lost as an employee, but remuneration paid for time lost shall be deemed earned in the month in which such time is lost. . . .

(2) A payment made by an employer to an individual through the employer's payroll shall be presumed, in the absence of evidence to the contrary, to be compensation for service rendered by such individual as an employee of the employer in the period with respect to which the payment is made.  An employee shall be deemed to be paid "for time lost" the amount he is paid by an employer with respect to an identifiable period of absence from the active service of the employer, including absence on account of personal injury, and the amount he is paid by the employer for loss of earnings resulting from his displacement to a less remunerative position or occupation.  If a payment is made

by an employer with respect to a personal injury and includes pay for time lost, the total payment shall be deemed to be paid for time lost unless, at the time of payment, a part of such payment is specifically apportioned to factors other than time lost, in which event only such part of the payment as is not so apportioned shall be deemed to be paid for time lost.

26 U.S.C. § 3231(e)(1)–(2) (1970). Thus, in the early 1970s, the RRTA provided that compensation included remuneration for time lost, provided a rule to calculate the amount paid for time lost on account of personal injury, and contained the presumption that the entirety of a personal injury payment was remuneration for time lost in the absence of specific apportionment to other factors.

Congress amended both of these subsections in 1975. *See* Act of Aug. 9, 1975, Pub. L. No. 94-93, § 204, 90 Stat. 466, 466. First, Congress amended 26 U.S.C. § 3231(e)(1) by changing "earned by" to "paid to" and deleting the clause defining compensation to include remuneration for time lost. *See* 26 U.S.C. § 3231(e)(1) (Supp. 1975). Amended § 3231(e)(1) provided that " 'compensation' means any form of money remuneration paid to an individual for services rendered as an employee to one or more employers." 26 U.S.C. § 3231(e)(1) (Supp. 1975). Second, Congress changed the first sentence of § 3231(e)(2), which related to a presumption that payments made through the payroll were compensation, but did not delete the language related to remuneration for time lost.[1] *See id.* § 3231(e)(2).

---

[1]Following the 1975 amendments, the full text of 26 U.S.C. § 3231(e)(2) provided:

(2) An employee shall be deemed to be paid compensation in the period during which such compensation is earned only upon a written request by such employee, made within six months following the payment, and a showing that such compensation was earned during a period other than the period in which it was paid. An employee shall be deemed to be paid "for time lost" the amount he is paid by an employer

Accordingly, although Congress deleted the "for time lost" language from § 3231(e)(1), Congress retained the language in § 3231(e)(2) defining payments for time lost and the presumption that the entirety of a personal injury payment would be considered pay for time lost as long as some part of the payment included pay for time lost and there was no specific allocation to other factors. Therefore, albeit with one change, the RRTA continued to address payments for time lost on account of personal injury.[2]

---

with respect to an identifiable period of absence from the active service of the employer, including absence on account of personal injury, and the amount he is paid by the employer for loss of earnings resulting from his displacement to a less remunerative position or occupation. If a payment is made by an employer with respect to a personal injury and includes pay for time lost, the total payment shall be deemed to be paid for time lost unless, at the time of payment, a part of such payment is specifically apportioned to factors other than time lost, in which event only such part of the payment as is not so apportioned shall be deemed to be paid for time lost.

26 U.S.C. § 3231(e)(2) (Supp. 1975).

[2]Speaking about the 1975 amendment, Senator Russell B. Long, Chairman of the Senate Finance Committee, explained that:

[It] essentially restores the practice existing up until this year when a new revenue ruling interpreted the law to require that these taxes be assessed as of the period when the wages were actually earned. This revenue ruling creates an administrative burden on railroad employers and provides a taxing basis which is inconsistent with the basis under which the Railroad Retirement Board credits wages to employee accounts for benefit computation purposes. This amendment will make the two procedures consistent in that for both tax assessment and benefit computation purposes wages will be considered to be earned as of the period when they are actually paid except that the employee may, at his option, request that these determinations be made on the basis of when the wages were actually earned.

*See* 121 Cong. Rec. 26759 (1975) (statement of Sen. Long). Thus, Senator Long's remarks indicate the 1975 amendments were designed primarily to fix confusion over *when* wages were considered earned, as opposed to *what* could be considered wages or compensation. *See Atchison, Topeka & Santa Fe Ry.*, 628 F. Supp. at 1435–37 (collecting similar statements of congressmen and senators in concluding that, following the 1975 amendments, the RRTA imposed taxes upon compensation to the extent and at the rate of tax applicable when paid).

Congress deleted the remaining "for time lost" language from the RRTA in 1983 as part of an overhaul to both the RRA and RRTA. *See* Railroad Retirement Solvency Act of 1983, Pub. L. No. 98-76, § 225, 97 Stat. 411, 424–27. We have not uncovered any legislative history indicating a reason for the deletion.[3] In any event, the salient point is that, since 1983, the RRTA's definition of compensation has not contained any explicit language relating to payments for time lost on account of personal injury or otherwise. The RRTA also no longer contains explicit language indicating whether compensation includes payments for time lost, language setting forth the appropriate manner in which to calculate the amount of a personal injury award constituting payment for time lost, or language providing an allocation presumption. *See* 26 U.S.C. § 3231(e) (2006). In contrast, the RRA does. *See* 45 U.S.C. § 231(h).

In 1994, the IRS put out final regulations that would reflect the changes to the RRTA since the 1960s. *See* Update of Railroad Retirement Tax Act Regulations, 59 Fed. Reg. 66188 (Dec. 23, 1994) (to be codified at 26 C.F.R. pt. 31). Prior to 1994, the IRS had promulgated a regulation at 26 C.F.R. § 31.3231(e)–1(a)(4) that provided the definition of compensation under the RRTA included pay for time lost. *Id.* One commentator suggested deleting this regulation because Congress had deleted the companion language from the RRTA in 1983. *Id.* The IRS declined to do so. *Id.* The IRS noted that prior to the 1983 amendments, the RRTA specifically provided for the inclusion of payments for time lost

---

[3]Two House Reports accompanied the 1983 amendments. *See* H.R. Rep. No. 98–30(I) (1983), *reprinted in* 1983 U.S.C.C.A.N. 729, 1983 WL 25317; H.R. Rep. No. 98–30(II) (1983), *reprinted in* 1983 U.S.C.C.A.N. 813, 1983 WL 25318. Although the reports contain thorough explanations of many changes to the RRA and RRTA, neither contains a discussion of why Congress removed the "for time lost" language from the RRTA.

in the definition of compensation and that the 1983 amendments "significantly amended the definition of compensation," such as by "changing the inclusion of items to a 'paid basis' from an 'earned basis' and providing the present two tiered structure." *Id.* The IRS concluded, however, that "[t]he legislative history does not indicate that Congress intended to exclude payments for time lost from compensation." *Id.*

The IRS regulation, before and after the 1994 update, provided that "[t]he term *compensation* is not confined to amounts paid for active service, but includes amounts paid for an identifiable period during which the employee is *absent from the active service* of the employer." 26 C.F.R. § 31.3231(e)–1(a)(3) (2013) (second emphasis added). The regulation further provides that "[c]ompensation includes amounts paid to an employee for loss of earnings during an identifiable period as the result of the displacement of the employee to a less remunerative position or occupation as well as *pay for time lost*." *Id.* § 31.3231(e)–1(a)(4) (emphasis added). Thus, under the IRS's interpretation, the broad RRTA language related to compensation still included payment for time lost notwithstanding the 1975 and 1985 amendments.

Similarly, the RRB has taken the position that payment for "time lost" is subject to withholding under the RRTA and that the RRA's allocation rule applies for purposes of withholding under the RRTA. *See* U.S. R.R. Ret. Bd., *Railroad Retirement Service Credits and Pay for Time Lost* 3 (May 2011), http://www.rrb.gov/opa/mmqa/1105.asp. Specifically, the RRB noted that while situations involving pay for time lost most commonly arise from personal injury settlements, they can also result from FELA actions. *Id.* at 1–2. According to the RRB, "absent a specific allocation amount, or a specific award amount for losses other than earnings, the RRB will consider the entire amount of damages to be

pay for time lost," and "[a]s with all other compensation payments, employers are responsible for the proper reporting of service and compensation to the RRB, as well as tax and contribution obligations under the Railroad Retirement Tax Act." *Id.* at 2. The RRB further provides that "pay for time lost is subject to taxation under the Railroad Retirement Tax Act," that "[p]ay for time lost is not . . . creditable on the basis of when the payment is made, but to the period for which the payment is allocated," and that "[t]he employee's portion of the railroad retirement tax liability is usually withheld from the gross amount of the award." *Id.* at 3.

Since 1994, Congress has amended the RRTA's definition of compensation four times, but none of these amendments pertain to payment for time lost. Instead, Congress amended 26 U.S.C. § 3231(e) to exclude Archer Medical Savings Accounts, health savings account contributions, and certain qualified stock options. *See* 26 U.S.C. § 3231(e)(10)–(12); *see also* American Jobs Creation Act of 2004, Pub. L. 108-357, Title II, § 251(a)(2), Title III, § 320(b)(2), 118 Stat. 1458, 1418, 1473; Medicare Prescription Drug Improvement and Modernization Act of 2003, Pub. L. 108-173, Title XII, § 1201(d)(2)(A), 117 Stat. 2066, 2477; Consolidated Appropriations—FY2001, Pub. L. 106-554, § 1(a)(7) & App. G [Title II, § 202(b)(5)], 114 Stat. 2763, 2763A–629; Health Insurance Portability and Accountability Act of 1996, Pub. L. 104-191, Title III, § 301(c)(2)(A), 110 Stat. 1936, 2049.

### B. Treatment of the Jury Verdict.

1. *Positions of the parties.* Phillips maintains that when a general verdict is rendered, under Iowa law the district court cannot allocate any portion of it to damages for time lost. According to Phillips, the district court in effect altered or amended the general jury verdict by declaring

that it should be presumed to include at least some amount of damages for lost income. Phillips cites *Ostrem v. State Farm Mutual Automobile Insurance Co.*, 666 N.W.2d 544, 546 (Iowa 2003), for the proposition that a district court has very limited authority to correct mistakes or errors in jury verdicts. Phillips also cites an unpublished Iowa Court of Appeals opinion for the proposition that when an Iowa jury enters a general verdict, the district court has "no way of knowing how the jury compensated [the plaintiff] for each element of damages." *Cooney v. Yahnke*, No. 02–1051, 2003 WL 22438705, at *1 (Iowa Ct. App. Oct. 29, 2003) (unpublished opinion).

Phillips criticizes the district court for taking into consideration an affidavit submitted by the railroad's paralegal that asserts, following juror interviews, the jury awarded damages for Phillips's lost wages. Phillips argues that under Iowa Rule of Evidence 5.606 the mental processes of jurors may not be penetrated except to determine whether extraneous prejudicial information or another outside influence improperly influenced any juror. Further, Phillips asserts the railroad's use of the paralegal's affidavit amounts to triple hearsay.

In support of his position, Phillips cites an unreported case of the Missouri Court of Appeals, *Mickey v. BNSF Railway*, No. ED 98647, 2013 WL 2489832 (Mo. Ct. App. June 11, 2013) (unpublished opinion), *transfer to Missouri Supreme Ct. granted* Oct. 1, 2013. Relying on Missouri law, the Missouri court held there was no presumption that a general verdict necessarily contained an award for time lost under the circumstances presented in that case. *Id.* at *4–5. This case is currently on appeal to the Missouri Supreme Court.

Phillips rejects the notion that the question is controlled by federal law. Phillips recognizes that under the RRA, 45 U.S.C. § 231(h)(2), a

payment made by an employer with respect to a personal injury and which includes pay for time lost, the entire amount is deemed to be payment for time lost unless there is a specific apportionment to other factors, but maintains the RRA does not apply to questions regarding taxation. According to Phillips, the RRTA governs tax questions, and there is no provision in the RRTA, and also no IRS regulation interpreting the RRTA, requiring that damages in general verdicts where lost income is awarded be deemed entirely awards for lost income absent a specific apportionment to other factors.

The railroad argues the question of how to treat the general verdict of the jury in this FELA case is controlled by federal law. *See In re Estate of Gearhart*, 584 N.W.2d 327, 329–30 (Iowa 1998) (concluding a FELA settlement should not have been apportioned under state law); *Snipes v. Chi., Cent. & Pac. R.R.*, 484 N.W.2d 162, 164 (Iowa 1992) (noting federal law governs the measure of damages in a FELA case filed in state court). The railroad notes the RRA's language in 45 U.S.C. § 231(h)(2) deems an entire payment constitutes payment for time lost absent a specific allocation indicating otherwise.

The railroad also relies on *Jacques v. United States Railroad Retirement Board*, 736 F.2d 34 (2d Cir. 1984). In *Jacques*, the United States Court of Appeals for the Second Circuit held that when a complaint alleged and sought damages for "loss of services and earnings in the past" the unallocated verdict is "for time lost" within the meaning of the RRA. *Id.* at 39. According to the court, it was only necessary to establish that a small part of the unallocated payment was for time lost in order to deem the entire amount payment for time lost within the meaning of 45 U.S.C. § 231(h)(2). *Id.*

If state law controls, as Phillips claims, the railroad asserts the district court properly determined a part of the general verdict amounted to payment for time lost. The railroad notes the Nebraska Supreme Court recently considered this precise question in *Heckman*, 837 N.W.2d at 532. The Nebraska court concluded that, under state law, a general verdict was presumed to include an element of all validly submitted claims for damages, including lost income. *Id.* at 537–38.

2. *Discussion.* We agree with the railroad on this preliminary issue. The parties have provided us with only cursory discussion on the issue of whether state or federal law applies to determine the effect of the general jury verdict, but we conclude resolution of the question of whether state or federal law applies on this issue does not matter.

If federal law controls, we agree with the railroad that the entire judgment in this case should be considered remuneration for time lost. The RRA expressly provides that if payments made with respect to a personal injury include pay for time lost, the entire payment is deemed pay for time lost for tax purposes, absent some allocation indicating otherwise. 45 U.S.C. § 231(h)(2). It is not disputed that the jury was instructed to consider damages for lost wages from the date of the injury to the time of trial.

While it is true there is no comparable provision in the RRTA, there is no logical reason to conclude that such silence is an indication Congress intended a different rule to apply for purposes of tax withholding under the RRTA. The Second Circuit reached a similar result with respect to a personal injury settlement in *Jacques*. *See* 736 F.2d at 39. *Jacques*, however, is rather conclusory, and while we do not rely too heavily on it, we nonetheless think the result in that case represents the better view of the law.

In any event, even if Iowa law controlled the issue, we do not believe Phillips has made the case for reversal of the district court. In reaching this conclusion, we do not rely upon the railroad's evidence regarding the mental processes of the jury. Instead, we rely upon principles of law.

Specifically, over a century ago, we held that a general verdict "is decisive of all issues submitted not specially found by the jury, and precisely as conclusive." *Schulte v. Chi., M. & St. P. Ry.*, 114 Iowa 89, 92, 86 N.W. 63, 64 (1901). The clear implication of *Schulte* is that as long as a jury is instructed on a type of damages and there is substantial evidence to support an award of damages, the court can presume at least some portion of the award was for that type of damages.

An instructive analogy may be found in our treatment of cases in which a jury returns a general verdict in a negligence action, but at least one specification of negligence was erroneously submitted to the jury. In this circumstance, we presume the jury relied upon the faulty specification of negligence and reverse the verdict for a new trial. *E.g.*, *Nichols v. Westfield Indus., Ltd.*, 380 N.W.2d 392, 397 (Iowa 1985). In short, we assume the jury relied on all specifications of negligence and that one faulty instruction taints the entire verdict.

Here, we have the reverse situation of *Nichols*. There has been no challenge to any of the jury instructions on the various elements of damages. The jury returned a general verdict. The question is whether the jury relied on each of the theories of damages in reaching its verdict. Under *Schulte,* we think the answer is yes.

Our view of state law is consistent with the conclusion of the Nebraska Supreme Court in *Heckman.* In *Heckman,* like this case, a railroad employee was awarded damages in a FELA case via a general

verdict for on-the-job injuries sustained while working for a railroad. 837 N.W.2d at 535. The Nebraska court noted that a state court could rely upon state procedural rules, absent some direction from federal law, and federal substantive law to determine the outcome of the case. *Id.* at 537. The Nebraska court then determined that under Nebraska law, the general jury verdict was based at least in part on lost wages because the employee had alleged lost wages in his complaint, had presented substantial evidence at trial in support of the claim, and the trial court had instructed the jury on the issue of lost wages. *Id.* at 538. Thus, the Nebraska court concluded the general verdict should be considered based, at least in part, on lost wages. *Id.* Although the Nebraska court was construing Nebraska law, we think its reasoning tends to support our conclusions under Iowa law.

In sum, we conclude that regardless of whether the issue is controlled by federal law or Iowa law, a general verdict carries a presumption that the jury awarded damages on each element of damages properly before it. Here, the jury was instructed to consider damages for lost wages. Therefore, we hold the entire amount of the verdict in this case should be considered payment for time lost.

**C. Treatment of Damages for Time Lost for Purposes of Tax Withholding Under Federal Law.** We now turn to the question of whether remuneration for time lost is subject to tax withholding under the RRTA.

1. *Positions of the parties.* Phillips recognizes, under the RRA, compensation means any form of remuneration, "including remuneration paid for time lost as an employee." 45 U.S.C. § 231(h)(1). Phillips maintains, however, that the RRA's definition of compensation applies only for the purpose of determining the distribution of benefits to a

covered employee. For determinations of the *tax consequences* of an award, Phillips maintains the RRTA controls. Phillips further maintains a statutory provision in the RRA should have no bearing on the interpretation of the RRTA because the two statutes are codified twenty titles apart in the United States Code.

Here, according to Phillips, the plot thickens. While the RRTA formerly defined compensation in a similar manner to the RRA and expressly included language pertaining to payments for time lost, he notes, Congress eliminated such language from the RRTA. According to Phillips, this statutory change decoupled the manner of calculating benefits under the RRA from the manner of calculating taxes under the RRTA.

Phillips thus relies on the plain language of the statute and reads it narrowly. Under the RRTA's current definition of compensation, he maintains, compensation means only "any form of money remuneration paid to an individual *for services rendered as an employee* to one or more employers." 26 U.S.C. § 3231(e)(1) (emphasis added). Phillips claims that while payments for hours actually worked constitute compensation for services rendered, payments to an employee who is physically incapable of working, or payments for time lost, cannot be payments for services rendered under the RRTA. Phillips argues this interpretation is necessary because Congress's deletion of the language pertaining to payments for time lost must mean *something*. That something, according to Phillips, is that amounts paid for lost income on account of personal injury must be taken into account in the calculation of benefits under the RRA, but are not taxable under the RRTA.

Phillips recognizes the IRS has taken the position that the 1983 amendments do not affect the scope of compensation subject to

withholding as lost income under the RRTA. *See* 26 C.F.R. § 31.3231(e)–1(a)(4). He contends, however, that the IRS cannot resort to legislative history to ignore the plain language of the RRTA unless it would lead to an absurd result. *See United States ex rel. Totten v. Bombardier Corp.*, 380 F.3d 488, 494 (D.C. Cir. 2004) (remarking that under *Lamie v. U.S. Tr.*, 540 U.S. 526, 534, 124 S. Ct. 1023, 1030, 157 L. Ed. 2d 1024, 1033–34 (2004), it is inappropriate to consider legislative history unless the disposition required by the text of the statute is absurd).

The railroad responds by citing numerous authorities for the proposition that lost income is subject to withholding under the RRTA notwithstanding Congress's amendments to 26 U.S.C. § 3231(e). The railroad cites a string of mostly federal cases to that effect. *See, e.g., Chi. Milwaukee Corp. v. United States*, 35 Fed. Cl. 447, 455 & n.6 (1996). The railroad also points to the IRS regulation interpreting 26 U.S.C. § 3231(e) to include payments for time lost and the RRB's interpretation to the same effect. *See* 26 C.F.R. § 31.3231(e)–1(a)(4); U.S. R.R. Ret. Bd., *Railroad Retirement Service Credits and Pay for Time Lost* 3.

In addition, the railroad argues that even if these authorities are not entirely convincing, Congress has acquiesced to the IRS's interpretation of the RRTA. The railroad notes Congress has opened the hood of the RRTA a number of times over the years to tinker with some of the wires, but has never taken action to repudiate the caselaw, the IRS regulation, or the RRB's interpretation of the tax treatment of payments for time lost.

2. *Discussion.* We begin by recognizing that the question of whether the railroad in this case properly withheld amounts for taxes under the RRTA is a question of federal law. All parties recognize the majority of federal authority comes to the result advocated by the

railroad—that the entire amount of Phillips's award is taxable under the RRTA as compensation for time lost. The issue we confront is whether that authority is sufficiently persuasive to follow or whether we should embark on a different path.

A few federal cases confront the issue we face in a meaningful manner. For example, a federal district court in *Atchison, Topeka & Santa Fe Railway* discussed legislative history accompanying the 1975 amendments, but that court discussed the history with regard to the rate applicable to the taxes and did not explain in any detail the reason for Congress's elimination of the "time lost" language from 26 U.S.C. § 3231(e)(1). *See* 628 F. Supp. at 1435–37. Similarly, in *Chicago Milwaukee Corporation*, the Court of Federal Claims discussed, in a footnote, both the 1975 and 1983 amendments in some length with regard to the elimination of the "time lost" language, but its reasoning is not very powerful. *See* 35 Fed. Cl. at 455 n.6. That court relied on *Atchison, Topeka & Santa Fe Railway* for the proposition that the 1975 amendment "was intended solely to clarify that the RRTA tax was assessed to the extent and at the rate applicable *when paid*, rather than when earned," and then noted the 1983 amendment was a technical change to further accommodate the 1975 amendment. *Id.* The Court of Federal Claims concluded that "[n]othing in the legislative history indicates that Congress intended to change the substantive definition of 'compensation.'" *Id.* "Rather," the court continued, "Congress sought to make compensation taxable to the extent and at the rate applicable when paid." *Id.* It further cited the IRS's rejection of the notion that payment for time lost was not taxable. *Id.* Neither of these cases, however, analyzes in a meaningful way congressional acquiescence to the IRS's interpretation with respect to treatment of payments for time lost on

account of personal injury. It is beyond dispute the plain language of the RRTA once provided for payments for time lost on account of personal injury, but no longer does.

Both the railroad and the United States, as amicus curiae, cite a number of cases in which the United States Supreme Court has declared IRS regulations to be entitled to judicial deference as long as they are reasonable. *See Mayo Found. for Med. Educ. & Research v. United States*, 562 U.S. ___, ___, 131 S. Ct. 704, 713–14, 178 L. Ed. 2d 588, 598–600 (2011); *United States v. Cleveland Indians Baseball Co.*, 532 U.S. 200, 218–19, 121 S. Ct. 1433, 1444, 149 L. Ed. 2d 401, 417–18 (2001); *Chevron, U.S.A., Inc. v. Natural Res. Defense Council, Inc.*, 467 U.S. 837, 842–43, 104 S. Ct. 2778, 2781–82, 81 L. Ed. 2d 694, 702–03 (1984).

The seminal case concerning deference to an administrative agency's reasonable interpretation of a statute is *Chevron*, 467 U.S. 837, 104 S. Ct. 2778, 81 L. Ed. 2d 694. "*Chevron* deference is appropriate when an agency exercises its generally conferred authority to resolve a particular statutory ambiguity and the resulting interpretation is based on a permissible construction of the statute." *North Dakota v. U.S. Envtl. Prot. Agency*, 730 F.3d 750, 763 (8th Cir. 2013). In *Mayo*, the Supreme Court found that

> [t]he principles underlying . . . *Chevron* apply with full force in the tax context . . . . Filling gaps in the Internal Revenue Code plainly requires the Treasury Department to make interpretive choices for statutory implementation at least as complex as the ones other agencies must make in administering their statutes.

562 U.S. at ___, 131 S. Ct. at 713, 178 L. Ed. 2d at 599; *see also BNSF Ry. v. United States*, 745 F.3d 774, 781 (5th Cir. 2014) ("[T]he Supreme Court has made clear that IRS regulations may receive *Chevron* deference.").

To determine if *Chevron* deference is appropriate:

> [W]e ask first whether "the intent of Congress is clear" as to "the precise question at issue." If, by "employing traditional tools of statutory construction," we determine that Congress' intent is clear, "that is the end of the matter." But "if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." If the agency's reading fills a gap or defines a term in a reasonable way in light of the Legislature's design, we give that reading controlling weight, even if it is not the answer "the court would have reached if the question initially had arisen in a judicial proceeding."

*Regions Hosp. v. Shalala*, 522 U.S. 448, 457, 118 S. Ct. 909, 915, 139 L. Ed. 2d 895, 903–04 (1998) (citations omitted) (quoting *Chevron*, 467 U.S. at 842, 843 & n.9, n.11, 104 S. Ct. at 2781 & n.9, 2782 & n.11, 81 L. Ed. 2d at 702, 703 & n.9, n.11). *Chevron* deference is appropriate " 'when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority.' " *Mayo*, 562 U.S. at \_\_\_, 131 S. Ct. at 713, 178 L. Ed. 2d at 599 (quoting *United States v. Mead Corp.*, 533 U.S. 218, 226–27, 121 S. Ct. 2164, 2171, 150 L. Ed. 2d 292, 303 (2001)).

Here, like in *Mayo*, the Treasury Department issued final regulations related to the RRTA pursuant to explicit authorization to "prescribe all needful rules and regulations for the enforcement" of the Internal Revenue Code. 26 U.S.C. § 7805(a). The Supreme Court has found such "express congressional authorizations to engage in the process of rulemaking" to be "a very good indicator of delegation meriting *Chevron* treatment." *Mead*, 533 U.S. at 229, 121 S. Ct. at 2172, 150 L. Ed. 2d at 305. The Treasury Department issued the rule after notice-and-comment procedures, *see* Update of Railroad Retirement Tax

Regulation, 58 Fed. Reg. 28366 (proposed May 13, 1993) (to be codified at 26 C.F.R. pt. 31), which is considered a "significant" sign that the rule is entitled to *Chevron* deference under the court's precedents. *Mead*, 533 U.S. at 230–31, 121 S. Ct. at 2173, 150 L. Ed. 2d at 305–06; *see, e.g., Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 173–74, 127 S. Ct. 2339, 2350–51, 168 L. Ed. 2d 54, 68 (2007). We therefore find this case is properly analyzed under *Chevron.*

Next, we turn to *Chevron*'s two-step analysis. The first question is "whether Congress has directly spoken to the precise question at issue." *Chevron*, 467 U.S. at 842, 104 S. Ct. at 2781, 81 L. Ed. 2d at 702–03. "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 842–43, 104 S. Ct. at 2781, 81 L. Ed. 2d at 703. The Court will "employ the traditional tools of statutory interpretation to determine whether the statute makes clear the intent of Congress as to the meaning of the word [compensation]" in the RRTA. *North Dakota*, 730 F.3d at 763; 26 U.S.C. § 3231(e).

We will therefore look first at the statutory language itself. "In determining whether Congressional intent is clear (and, therefore, deference not being accorded the agency), we . . . look first and foremost to the language of the statute." *Martinez v. Mukasey*, 519 F.3d 532, 543 (5th Cir. 2008); *see also INS v. Cardoza-Fonseca*, 480 U.S. 421, 432 n.12, 107 S. Ct. 1207, 1213 n.12, 94 L. Ed. 2d 434, 448 n.12 (1987) ("Congress expresses its intent through the language it chooses."). Here, 26 U.S.C. § 3231(e) defines compensation under the RRTA as, "any form of money remuneration paid to an individual for services rendered as an employee to one or more employers." "Time lost" does not appear in the current definition of compensation in the RRTA. The language was

removed from the definition of compensation in the RRTA by Congress in 1975 and 1983. This deletion, however, does not compel an assumption that Congress intended the definition of compensation to exclude time lost in the RRTA. *Cf. Petit v. U.S. Dep't of Educ.*, 675 F.3d 769, 789 (D.C. Cir. 2012) (In reviewing the Department of Education's interpretation of the IDEA, the United States Court of Appeals for the District of Columbia noted that they could not find any authority to support the appellants contention that "an agency frustrates Congress's intent by not attaching disposition weight to an inference that can be drawn from unenacted text."); *Edison Elec. Inst. v. U.S. Evntl. Prot. Agency*, 2 F.3d 438, 451 (D.C. Cir. 1993) (per curiam) ("[W]e need only note that the deletion of a word or phrase in the throes of the legislative process does not ordinarily constitute, without more, evidence of a specific legislative intent."). Further, we note that at least one other court has found the definition of compensation, as used in 26 U.S.C. § 3231, inherently ambiguous. *See, e.g.*, *BNSF Ry.*, 745 F.3d at 782 (where the Fifth Circuit found that " 'compensation' and 'any form of money remuneration' is inherently ambiguous" as used in 26 U.S.C. § 3121, at least as applied to Non–Qualified Stock Options). Therefore, in looking only at the text of the statute, no clear congressional intent can be discerned as to the meaning of compensation in the RRTA.

The Court will therefore "examin[e] the text of the statute as a whole by considering its context, object, and policy," *Harmon Indus., Inc. v. Browner*, 191 F.3d 894, 899 (8th Cir. 1999) (internal quotation marks omitted), to help determine Congress's intent as to the meaning of compensation in the RRTA. "In other words, the meaning of statutory language, plain or not, depends on context." *Pelofsky v. Wallace*, 102 F.3d 350, 353 (8th Cir. 1996) (internal quotation marks omitted). The

Court in *United Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd.*, found that statutory terms are often "clarified by the remainder of the statutory scheme—because the same terminology is used elsewhere in a context that makes [their] meaning clear or because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law." 484 U.S. 365, 371, 108 S. Ct. 626, 630, 98 L. Ed. 2d 740, 748 (1988) (citation omitted).

Here, when examining the text of the statute as a whole in context, including the statutory scheme of the RRTA, it is unclear whether Congress intended to include time lost in the definition of compensation. The RRA and the RRTA are inextricably interconnected because the latter funds the former. The RRA, which one court described as "the expenditure side of the coin" and the RRTA "the revenue side," *Standard Office Bldg. Corp.*, 819 F.2d at 1373, explicitly includes time lost in its definition of compensation, 45 U.S.C. § 231(h)(1). In a legal opinion dated December 2, 2005, the RRB stated that "[t]his Office has long recognized that in view of the substantial similarity between the definitions of compensation under the RRA and RRTA, it is desirable, absent controlling language to the contrary, to treat payments to employees by employers in the same fashion under both statutes." U.S. R.R. Ret. Bd., Legal Op. L-2005-25: *Qualified and Non-Qualified Stock Options, Compensation Under the RRA and RRTA* (2005), http://www.rrb.gov/blaw/digestcards.asp. It would therefore seem logical to read these two statutes in harmony to conclude that compensation as used in the RRTA implicitly includes time lost.

Because congressional intent is unclear when analyzed using the statutory language itself and when considering the structure of the statute as a whole, we next consider the legislative history of the

definition of compensation in the RRTA to determine if it contains hints as to the intention of Congress to remove time lost. The legislative history, as described above,

> reveals that the 1975 amendment was intended solely to clarify that the RRTA tax was assessed to the extent and at the rate applicable *when paid*, rather than when earned, as had been the case prior to 1975, and that the 1983 amendment to the definition of compensation was a further 'technical and conforming amendment' designed to accommodate the 1975 change in the law from an "earned basis" to a "paid basis."

*Chi. Milwaukee Corp.*, 35 Fed. Cl. at 455 n.6 (citations omitted).

Therefore, on one side Congress explicitly removed the phrase "time lost" from the definition of compensation in the RRTA, which would lead some to the conclusion that the phrase was intentionally excluded. On the other hand, the RRA includes time lost in its definition of compensation and the RRA is part of the context and statutory scheme which courts look to in analyzing congressional intent. Further, the legislative history appears to conclude that amendments, which removed the "time lost" language from the RRTA, did not intend to remove the phrase from the meaning of compensation, although the legislative history is generally unhelpful in clarifying Congress's intent on this precise issue. Thus, when considering the statutory language, the statutory scheme, and the legislative history of the definition of compensation as used in the RRTA, we find congressional intent ambiguous. Accordingly, we turn to step two in *Chevron*'s analysis: "whether the agency's [interpretation] is based on a permissible

construction of the statute." *Chevron,* 467 U.S. at 843, 104 S. Ct. at 2782, 81 L. Ed. 2d at 703.[4]

After a public hearing was held and written comments were considered, final regulations updating the existing RRTA regulations were adopted by the Treasury Department in December of 1994. *See* Update of Railroad Retirement Act Regulations, 59 Fed. Reg. 66188. The regulation determined that the 1983 revision to the RRTA did not intend to change the definition of compensation to exclude payment for time lost:

> Prior to the 1983 Act, statutory language specifically provided for the presumption and the inclusion of payments for time lost. In amending the definition of compensation, the 1983 Act did not reenact the statutory language. The legislative history does not indicate that Congress intended to exclude payments for time lost from compensation or negate the presumption that payments made through an employer's payroll are compensation.

*Id.* 26 C.F.R. § 31.3231(e)–1(a)(4) provides that "[c]ompensation includes amounts paid to an employee for loss of earnings during an identifiable period as the result of the displacement of the employee to a less remunerative position or occupation *as well as pay for time lost.*" (Emphasis added.) Additionally, 26 C.F.R § 31.3231(e)–1(a)(3) explains compensation is not limited only to amounts earned or paid for active employment service, as the definition also includes amounts earned or paid for an "identifiable period during which the employee is absent from the services of the employer."

---

[4]The Court made clear that it "need not conclude that the agency construction was the only one it permissibly could have adopted to uphold the construction, or even the reading the court would have reached if the question initially had arisen in a judicial proceeding." *Chevron,* 467 U.S. at 843 n.11, 104 S. Ct. at 2782 n.11, 81 L. Ed. 2d at 703 n.11.

We find the Treasury Department's interpretation reasonable as applied to the definition of compensation. The IRS was aware of the removal of the phrase "time lost" from the definition of compensation from the statute and, after analyzing the legislative history, determined that Congress did not intend to "exclude payments for time lost from compensation." 26 C.F.R. § 31.3231(e)–1(a)(4). Although the RRTA's definition of compensation may exclude the phrase "time lost," we conclude that time lost properly falls within the RRTA's definition of compensation as interpreted by the Treasury Department in 26 C.F.R. § 31.3231(e)–1(a)(4) and is thus properly taxed as compensation under the RRTA.

Further, this interpretation is supported by at least one IRS document describing time lost in the context of the RRTA. "Interpretations such as those in opinion letters—like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law—do not warrant *Chevron*-style deference. . . . [They] are entitled to respect . . . to the extent that [they] have the power to persuade." *Christensen v. Harris County*, 529 U.S. 576, 587, 120 S. Ct. 1655, 1662–63, 146 L. Ed. 2d 621, 631 (2000) (citations omitted) (internal quotation marks omitted); *see, e.g.*, I.R.S. Instructions for Form CT-1, Employer's Annual Railroad Retirement Tax Return, Cat. No. 16005H (Nov. 25, 2013) (defining compensation as "payment in money, or in something that may be used instead of money, for services performed as an employee of one or more employers [and] includ[ing] payment for time lost as an employee"). We find this interpretation useful and compatible with the IRS's interpretation of compensation in 26 C.F.R. § 31.3231(e)–1(a)(4).

Moreover, this conclusion finds support in the RRA's interpretation of compensation to include time lost in its own statute and regulations. *See* 45 U.S.C. § 231(h)(1); 20 C.F.R. § 211.2(b)(2); 20 C.F.R. § 211.3(a) ("A payment made to an employee for a period during which the employee was absent from the active service of the employer is considered to be pay for time lost and is, therefore, creditable compensation."). The RRB has also consistently held that the RRTA's definition of compensation includes time lost. *See* U.S. R.R. Ret. Bd., *Railroad Retirement Service Credits and Pay for Time Lost* 3; U.S. R.R. Ret. Bd., *Pay for Time Lost from Regular Work*, Form 1B–4, at 8 (1996), http://www.rrb.gov/forms/ PandS/Misc/ib4.asp ("All compensation under the Railroad Retirement Tax Act (RRTA) is subject to the Tier I and Tier II tax rates and the annual maximum earnings bases in effect when the payment is made. This is also true of pay for time lost."); U.S. R.R. Ret. Bd., *Railroad Retirement Service Credits and Pay for Time Lost* 3 ("As with all compensation, pay for time lost is subject to taxation under the Railroad Retirement Tax Act at the tier I and tier II tax rates . . . .").

Additionally, other courts have held that time lost is included in the definition of compensation in the RRTA. The Nebraska Supreme Court in *Heckman* found that a general verdict in a FELA case was presumed to be for time lost and the entire award was subject to RRTA withholding taxes. 837 N.W.2d at 543 ("Under the RRA, the entire award is compensation subject to RRTA taxes that must be paid by the employer."). In *Chicago Milwaukee Corporation*, the Court analyzed why time lost was removed from the RRTA and concluded that "the 1975 amendment was intended solely to clarify that the RRTA tax was assessed to the extent and at the rate applicable *when paid*" and "the 1983 amendment to the definition of compensation was a further

'technical and conforming amendment' designed to accommodate the 1975 change in the law from an 'earned basis' to a 'paid basis'" and substantively, compensation was still to include payment for time lost. 35 Fed. Cl. at 455 n.6 (citations omitted).

The *Chicago Milwaukee Corporation* court's interpretation of the statute and legislative history is similar to that of the IRS and further evidences the reasonableness of the Treasury Regulation. *See also Hance v. Norfolk S. Ry.*, 571 F.3d 511, 523 (6th Cir. 2009) ("The Railroad Retirement Tax Act and its accompanying regulations also require an employer to pay Tier I and Tier II taxes on all 'compensation' to employees, including payment 'for time lost.' ").

For the above reasons, we conclude that the definition of compensation to include time lost as interpreted by the Treasury Department in 26 C.F.R. § 31.3231(e)–1 is reasonable, and thus, time lost is properly taxed as compensation under the RRTA.

**D. Employer Entitlement to Order of Satisfaction When Employer Has Withheld Taxes but Not Remitted Them to the IRS.** Phillips contends that even if the railroad prevails on its substantive legal interpretation of the RRA and RRTA, it is still not entitled to an order of satisfaction of the judgment in this case. According to Phillips, the railroad admitted before the district court that although it had withheld the proper amounts under the RRTA for taxes, it had not yet paid the amount to the IRS. As a result, Phillips argues there has been only a partial satisfaction of judgment.

The railroad responds that it has paid Phillips the full amount owed to him under the judgment. The railroad states it has now paid the necessary amounts to the IRS via quarterly payments, an assertion not contested by Phillips on appeal.

The district court did not rule upon this issue, and the plaintiffs did not file an Iowa Rule of Civil Procedure 1.904 motion seeking to expand the conclusions of the district court. Thus, a substantial question of error preservation is present. In any event, the railroad is required by law to withhold amounts due for taxes under the RRTA. We do not view compliance with the law in withholding of taxes as an impediment to a satisfaction of judgment. By law, Phillips is not entitled to payment of these amounts. Phillips having received all that was due, the railroad is entitled to an order of satisfaction from the district court.

### III. Conclusion.

For the reasons expressed above, we affirm the judgment of the district court.

**AFFIRMED.**