# IN THE SUPREME COURT OF IOWA

No. 19–1814

Submitted November 18, 2020—Filed December 23, 2020

**STATE OF IOWA,**

    Appellee,

vs.

**CHRISTOPHER CRAIG HAWK,**

    Appellant.

---

Appeal from the Iowa District Court for Wayne County, Patrick W. Greenwood, Judge.

The defendant appeals his restitution order. **AFFIRMED.**

Oxley, J., delivered the opinion of the court, in which all justices joined.

Martha J. Lucey, State Appellate Defender, and Stephan J. Japuntich, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Tyler J. Buller, Assistant Attorney General, and Alan M. Wilson, County Attorney, for appellee.

**OXLEY, Justice.**

Criminal restitution—specifically the determination of a defendant's ability to pay criminal restitution—has been the topic of numerous appeals and recent legislation. The defendant seeks review of the amount of restitution ordered by the district court, while the State argues recent amendments to the restitution statutes preclude our review. We conclude we can consider the district court's order, which we affirm.

## I. Background Facts and Proceedings.

Hawk was a passenger in his Jeep when his son ran a stop sign and was stopped by police officers on September 2, 2018. Officers arrested Hawk's son for driving without a valid license. The officers conducted a weapons pat down of Hawk as the passenger, discovered methamphetamine in Hawk's pocket, and arrested him too.

The State charged Hawk with possession of methamphetamine in an amount greater than five grams with intent to distribute, in violation of Iowa Code sections 124.401(1) and 124.401(b)(7) (2018), a Class "B" Felony, and failure to affix a drug tax stamp, in violation of Iowa Code sections 453B.1 and 453B.12, a Class "D" Felony. After a denied motion to suppress and plea negotiations, Hawk pled guilty to possession of methamphetamine in an amount less than five grams with intent to distribute, in violation of Iowa Code section 124.401(1)(c)(6), a Class "C" Felony. He does not appeal his guilty plea.

Hawk was sentenced on October 2, 2019, to the maximum sentence of ten years in prison and ordered to pay a $1000 fine plus a 35% surcharge. During sentencing, the district court considered Hawk's ability to pay court costs. According to the presentence investigation report, Hawk claimed earnings of $12,000 in 2018 from unemployment. He claimed debt from two vehicle loans totaling $18,000, both of which were

in default, $600 in credit card debt, and $2400 owed for court fees. At sentencing, he testified he lost his Jeep to a $3400 towing bill following his arrest and that he had been close to starting his own business when he was arrested, although he did not elaborate on what type of business.

In considering whether to order Hawk to pay court costs and his court-appointed attorney fees, the court concluded Hawk was "not incapable" of working and would be able to repay some amount of restitution. The court ordered Hawk to pay the full court costs of $343.50 but capped repayment of his court-appointed attorney fees at the lesser of $250 or the actual amount of fees. Thus, the "second category" restitution[1] ordered, apart from the $1000 fine, totaled $593.50. Hawk appealed this restitution order on October 30, arguing the amount of restitution was excessive.

## II. Legal Analysis.

**A. Jurisdiction to Hear Hawk's Appeal.** We initially retained this case to determine whether we could hear Hawk's appeal following a guilty plea in light of the changes to Iowa Code section 814.6, which went into effect on July 1, 2019. *See* Iowa Code § 814.6(1)(*a*)(3) (2020) (limiting direct appeals from a final judgment of sentence following a guilty plea to Class "A" felonies or a showing of "good cause"). The State "assumes without conceding" we have jurisdiction to hear Hawk's appeal under the

---

[1]Prior to revisions enacted on June 25, 2020, the Iowa Code recognized two categories of restitution, the second of which could be ordered only if the defendant had the reasonable ability to pay the restitution. *See* Iowa Code § 910.2(1) (2019); *id.* § 910.2(1) (2018). Court costs and reimbursement for court-appointed attorney fees were both considered "second category" restitution to which the ability-to-pay determination applied. *See id.* § 910.2(2) (2019). Those items are now considered Category B restitution and are still subject to an ability-to-pay determination. *See* 2020 Iowa Acts ch. 1074, § 69 (to be codified at Iowa Code § 910.1(001) (2021)) (defining Category "B" restitution); *id.* § 71 (to be codified at Iowa Code § 910.2(1)(*a*)(2) (2021)).

good cause provision of section 814.6(1)(*a*)(3) where Hawk is appealing the restitution order included in his sentence and not his guilty plea.

Since the time that we retained Hawk's appeal, the legislature enacted Senate File 457 (SF 457), which made changes to the criminal restitution scheme. *See* 2020 Iowa Acts ch. 1074, §§ 65–83. In short, SF 457 changed the procedure by which a defendant's ability to pay Category "B" restitution is determined, including shifting presumptions, imposing statutory waivers, and requiring financial affidavits. *See id.* The statutory amendments at issue took effect on June 25, 2020. *Id.* § 83. The State argues that those changes apply retroactively to strip us of jurisdiction to hear Hawk's challenge to the restitution order.

Criminal defendants can be ordered to pay different types of restitution. Some types of restitution such as restitution for pecuniary damages incurred by victims of the defendant's crimes, are not limited in amount. *See* Iowa Code § 910.2(1) (2018). Regardless of a defendant's financial wherewithal, he must make restitution for the monetary damages caused by his criminal actions. *See id.* Other types of restitution, such as court costs and reimbursement of court-appointed attorney fees, are limited to an amount the defendant is reasonably able to pay. *See id.* It is not uncommon for the total amount of some of those items to not be available at the time of sentencing. When that happens, we have directed that district

> [c]ourts must wait to enter a final order of restitution until all items of restitution are before the court. Once the court has all the items of restitution before it, then and only then shall the court make an assessment as to the offender's reasonable ability to pay.

*State v. Albright*, 925 N.W.2d 144, 162 (Iowa 2019); *see also* Iowa Code § 910.3(9) (providing for temporary and supplemental orders "[i]f the full amount of restitution cannot be determined at the time of sentencing").

Most recently, we reinforced that until a proper final restitution order had been entered—complete with a determination of the amount of second category restitution the defendant had the reasonable ability to pay—such restitution orders were not enforceable. *See State v. Davis*, 944 N.W.2d 641, 646 (Iowa 2020) ("[W]e reemphasize that 'any temporary, permanent, or supplemental order regarding restitution is not . . . enforceable until the court files its final order of restitution' after determination of the defendant's reasonable ability to pay." (quoting *Albright*, 925 N.W.2d at 162 (second alteration in original))).

Within days of *Davis*, the legislature passed SF 457, changing the process for determining a defendant's reasonable ability to pay second category (now Category "B") restitution items. *See* 2020 Iowa Acts ch. 1074, § 69 (to be codified at Iowa Code § 910.1(001) (2021)). The legislature addressed pending *Albright*-type cases awaiting a final restitution order that included consideration of a defendant's reasonable ability to pay by enacting Iowa Code section 910.2B. *See id.* § 73 (to be codified at Iowa Code § 910.2B (2021)). Section 910.2B identified specific restitution orders that, "if entered by a district court prior to the effective date of this Act, shall be converted to permanent restitution orders," including "temporary restitution order[s]," "supplemental restitution order[s]" and "restitution order[s] that do[] not contain a determination of the defendant's reasonable ability to pay the restitution ordered." *Id.* (to be codified at Iowa Code § 910.2B(1)(*c*) (2021)). Thus, under the legislation, orders we had previously concluded were unenforceable became enforceable on June 25, 2020, even absent a reasonable-ability-

to-pay determination. *See id.* § 69 (to be codified at Iowa Code § 910.1.3A (2021)) (defining a "permanent restitution order").

Under the new statutory scheme, a defendant can challenge the conversion of one of those orders only through a petition for hearing in the district court under section 910.7. *See id.* § 73 (to be codified at Iowa Code § 910.2B(2) (2021)). Further, the new procedures outlined in section 910.2A are required to be applied in that section 910.7 proceeding. *See id.* (to be codified at Iowa Code § 910.2B(3) (2021)). The State relies on the conversion statute to support its argument that we now lack jurisdiction to hear Hawk's appeal, arguing he must bring his challenge first to the district court through a section 910.7 petition.

We reject the State's reliance on section 910.2B in this case because Hawk is not challenging the conversion of a restitution order to a permanent restitution order. Rather, he challenges only whether the district court ordered an excessive amount of restitution. The district court considered Hawk's ability to pay restitution and ordered him to pay the full $343.50 in court costs but capped restitution for his court-appointed attorney fees at $250 even though the district court did not yet know the full amount of those fees. The order did not purport to order temporary restitution to be supplemented later. Rather, it entered a final restitution order, complete with an ability-to-pay determination. Hawk's restitution order therefore is not a temporary order, a supplemental order, or an order lacking an ability-to-pay determination—the types of orders specifically identified in section 910.2B that were converted to permanent orders. Section 910.2B simply does not apply to the restitution order entered in Hawk's criminal case on October 1, 2019.

The State relies on another provision of newly enacted section 910.2B to argue the legislature intended the procedures in SF 457 to apply

retroactively to sentencing orders entered prior to its enactment, including ones on appeal. *See* Iowa Acts ch. 1074, § 73 (to be codified at Iowa Code § 910.2B(3) (2021)) ("The provisions of this chapter, including but not limited to the procedures in section 910.2A, shall apply to a challenge to the conversion of an existing restitution order in the district court *and on appeal*." (emphasis added)). Construing the plain language of the statute, *see State v. Wickes*, 910 N.W.2d 554, 569 (Iowa 2018) ("[W]hen the terms and meaning of a statute are plain and clear, we enforce the statute as written."), this directive is expressly limited to "challenge[s] to the conversion of an existing restitution order." 2020 Iowa Acts ch. 1047, § 73 (to be codified at Iowa Code § 910.2B(3) (2021)). Having concluded Hawk's order was not converted under section 910.2B, his appeal does not fall within section 910.2B's directive. The purpose of section 910.2B is to make existing restitution orders immediately enforceable and to provide the mechanism by which a defendant can receive an ability-to-pay determination first from the district court. But here, Hawk has already received that determination. Section 910.2B(3) does not prevent us from considering Hawk's appeal.

That leaves the question of what we would do with Hawk's appeal under our pre-SF 457 jurisprudence. In a perfect world, the district court would have all items of restitution before it at the time of sentencing, consider the defendant's ability to pay the second category items of restitution, and include the restitution order in its sentencing order and judgment. When that occurs, the restitution order is part of the judgment of sentence and is appealable the same as any other part of the sentence. In *State v. Janz*, the defendant appealed the amount of victim restitution ordered at sentencing, and the state argued the defendant was required to exhaust her remedies in the district court by bringing a section 910.7

petition for hearing.  358 N.W.2d 547, 548 (Iowa 1984).  We recognized that avenue was available to the defendant but not required.  *Id.* at 549. Where section 814.6(1)(*a*) granted a criminal defendant the right of a direct appeal from "[a] final judgment of sentence," and section 910.2 contemplated that restitution orders would be part of a judgment of conviction, we held that the "defendant's appeal from the final judgment was also a permissible appeal from all orders incorporated in that sentence, including the order of restitution here challenged."  *Id.* (alteration in original) (first quoting Iowa Code § 814.6(1)(*a*) (1983)).

Here, the district court knew all relevant information except the total amount of court-appointed attorney fees.  There was no victim restitution (Hawk pleaded guilty to drug possession charges), and no claims were made for jail fees to be paid as part of restitution.  The district court ordered Hawk to pay a $1000 fine, the accompanying $350 criminal penalty surcharge, a $125 Law Enforcement Initiative fee, and a $10 D.A.R.E. surcharge.  Knowing Hawk faced these payment obligations, the district court considered Hawk's ability to pay second category restitution, ordered Hawk to pay $343.50 in court costs, and capped the amount of restitution he could pay toward his attorney fees at $250.  Even though the district court did not know the total amount of the fees at that time, it would not have mattered whether they totaled $250 or $25,000—the court considered Hawk's financial situation and concluded he could pay no more than $250.  Thus, where the district court conducted a reasonable-ability-to-pay determination and capped the defendant's restitution based on that determination, the fact that it lacked information about the total amount of attorney fees subject to restitution does not violate the rule we set out in *Albright*.  *Cf. State v. Covel*, 925 N.W.2d 183, 189 (Iowa 2019) (reversing and remanding restitution order where "the district court did not have the

total amount of restitution owed when it entered its order finding Covel reasonably able to pay" restitution in full).  In short, had we considered Hawk's appeal before enactment of SF 457, we would have been able to reach the merits of his appeal.

Having concluded that we would have jurisdiction to consider Hawk's appeal under both our pre-SF 457 jurisprudence and under the new provisions enacted in SF 457, we need not, and do not, dive into the morass of whether SF 457 applies retroactively to cases on appeal prior to its enactment.

**B. Was Hawk Required to Exhaust Remedies Under Section 910.7?**  In a related argument, the State argues that Hawk was required to exhaust his remedies by first challenging the amount of his restitution order in a section 910.7 petition in district court.  Even assuming SF 457 applies to Hawk's appeal, the State's argument still fails.

Section 80 of SF 457 provides:

> An appellate court shall not review or modify an offender's plan of restitution, restitution plan of payment, or any other issue related to an offender's restitution under this subsection, unless the offender has exhausted the offender's remedies under this section and obtained a ruling from the district court prior to the issue being raised in the appellate courts.

2020 Iowa Acts ch. 1074, § 80 (to be codified at Iowa Code § 910.7(4) (2021)).  The State's argument ignores the context of section 80 and another new provision added by SF 457.  *See Doe v. State*, 943 N.W.2d 608, 610 (Iowa 2020) ("In determining the ordinary and fair meaning of the statutory language at issue, we take into consideration the language's relationship to other provisions of the same statute and other provisions of related statutes."); *Phillips v. Chi. Cent. & Pac. R.R.*, 853 N.W.2d 636, 649 (Iowa 2014) (noting "that statutory terms are often 'clarified by the

remainder of the statutory scheme' " (quoting *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 371, 108 S. Ct. 626, 630 (1988))). Section 910.7 provides the mechanism for addressing restitution not ordered at the time of sentencing, unlike the order Hawk appeals. But "[a] permanent restitution order *entered at the time of sentencing* is part of the final judgment of sentence as defined in section 814.6 and *shall be considered in a properly perfected appeal*." 2020 Iowa Acts ch. 1074, § 74 (to be codified at Iowa Code § 910.3(8) (2021)) (emphasis added). Read together, these provisions reveal that even after SF 457's amendments, challenges to a final restitution order made at sentencing, like Hawk's challenge, are properly brought on direct appeal. The district court has already provided its ruling on the issue Hawk appeals; SF 457 does not require him to seek reconsideration of the district court's ability-to-pay determination.

**C. Did Hawk Preserve His Challenge to the Restitution Order?**

Separately, the State argues, citing *State v. Rutledge*, 600 N.W.2d 324, 325–26 (Iowa 1999), that Hawk was required to preserve his challenge to the district court's reasonable-ability-to-pay determination by objecting at the sentencing hearing or otherwise seeking reconsideration from the district court. But *Rutledge* involved an unobjected-to challenge to the prosecutor's actions, which we distinguished from a "complain[t about] any ruling or action of the trial court." *Id.* at 326. Here, Hawk is complaining about the determination the district court actually made. Thus, this is not a case where the "court fail[ed] to rule on a matter," triggering our preservation requirements under which the defendant "must request a ruling by some means." *State v. Krogmann*, 804 N.W.2d 518, 524 (Iowa 2011). Hawk did not need to object further in district court

to preserve his challenge to the amount his of restitution order. *See Janz*, 358 N.W.2d at 548–49.

**D. Did the District Court Abuse its Discretion in Determining the Amount of Restitution Hawk Had the Ability to Pay?** Having navigated the State's procedural challenges, we now consider the merits of Hawk's appeal. We review the district court's determination of the amount Hawk is reasonably able to pay towards second category restitution for an abuse of discretion. *See State v. Kaelin*, 362 N.W.2d 526, 528 (Iowa 1985).[2]

> [A] court should not order payment of restitution unless the convicted person "is or will be able to pay it without undue hardship to himself or dependents, considering the financial resources of the defendant and the nature of the burden payment will impose."

*Albright*, 925 N.W.2d at 161 (quoting *State v. Rogers*, 251 N.W.2d 239, 245 (Iowa 1977) (en banc)).

The State argues we should apply the new rules provided in section 910.2A to determine Hawk's reasonable ability to pay, and Hawk argues such retroactive application would violate his constitutional rights, citing *State v. Haines*, 360 N.W.2d 791, 796 (Iowa 1985) (recognizing ability-to-pay limitation on requirement to repay court-appointed attorney fees satisfied defendant's due process rights). Ultimately, the State argues the district court properly exercised its discretion in setting the total amount of Hawk's restitution under either pre- or post-SF 457 standards. Because we agree with the State that the district court's determination is consistent with our pre-SF 457 caselaw, we avoid the constitutional issue and affirm on that basis.

---

[2]This is the same standard of review we would apply under the standards set out in SF 457. *See* 2020 Iowa Acts ch. 1074, § 72 (to be codified at Iowa Code § 910.2A(5) (2021)).

Hawk argues he is indigent, has debt of over $20,000, and is incarcerated, so the district court should have found he did not have the ability to pay any of the second category restitution items. The district court noted these facts, but the court also considered Hawk's prior work experience, his relatively young age, and his ability to work. The court concluded:

> In light of the fact that Mr. Hawk is not incapable of working; in other words, he does have the capacity to work and he has some employment history, the Court finds that given time and the ability to repay some of the financial obligation or all of it according to a fine payment plan, that he does have the reasonable ability to pay the court costs in the amount of $343.50.
>
> However, his ability to repay attorney fees is limited because of his incarceration, lack of current employment and substantial debts. Therefore, the Court will impose attorney fees in the amount of $250 or the actual amount if the actual amount paid is less.

We recognize the obstacles criminal defendants face when saddled with large amounts of court debt that make it difficult to make a fresh start after serving their term of imprisonment. But we cannot say the district court abused its discretion in ordering Hawk to pay $343.50 in court costs and capping repayment of his court-appointed attorney fees at $250. The district court considered the proper factors and did not consider any improper factors. *See Albright*, 925 N.W.2d at 161 (identifying as factors "the financial resources of the defendant, including income and net assets, and the defendant's financial obligations, including the amount necessary to meet minimum basic human needs such as food, shelter, and clothing for the defendant and his or her dependents" as well as "the present and potential future financial needs and earning ability of the defendant and his or her dependents, and other factors as the court deems appropriate" (first quoting *Commonwealth v. Henry*, 55 N.E.3d 943, 953 (Mass. 2016))); *see also Walters v. Grossheim*, 525 N.W.2d 830, 832 (Iowa 1994) ("By

statute, incarceration creates no obstacle to performance under the restitution plan."); *Kaelin*, 362 N.W.2d at 528 ("The record shows defendant is indigent but has several skills that should enable him to earn income.  He also appears to be in good health.  Therefore we cannot say under the present record that he met his burden to upset the restitution order."); *State v. Storrs*, 351 N.W.2d 520, 522 (Iowa 1984) (concluding defendant had the reasonable ability to pay because she owned property, "had training and experience as a beautician," and did not prove she lacked ability to pay).  The district court acted within its discretion when it ordered Hawk to pay some second category restitution but limited it to less than $600.

### III.  Conclusion.

We affirm the restitution order of the district court.

**AFFIRMED.**